## FIRST NATIONAL BANK OF QUITMAN *v.* RAMBO *et al.*

1. Where a person who had purchased a lot of land lying in Georgia procured another to advance money with which to pay the balance of the purchase-price, and a deed was made by the vendor to such other person, and a bond for title was executed by him, agreeing to convey the land to the vendee upon payment of notes given to him by such vendee, and all of these papers were executed in Georgia; and where it did not appear that payment was to be made or the contract consummated in any way elsewhere, the usury law of this State, and not that of the State of Florida, applied to the contract and conveyances so made, although the negotiations and parol agreements preceding the execution of the papers may have taken place in Florida.

2. Where, in a transaction of the character indicated in the preceding headnote, the vendor was willing to take less than the full amount of the indebtedness held by him, and the vendee paid a portion thereof, and the person who was procured to make the advance paid the balance of

the amount which the vendor was willing to accept in settlement, but took notes from the vendee, each of which included in one sum principal and interest to maturity, and the aggregate of such notes amounted to the sum so advanced, with more than eight per cent. interest thereon; and where, by agreement between the parties, the person making the advance took from the vendor, to secure such amount, a conveyance of the land, such deed was infected with usury and was void.

3. Where, in a transaction of the character above indicated, the vendee transferred to a bank the bond for title, which she had taken from her original vendor, and which had not been surrendered or canceled in connection with the loan and payment of the purchase-money, and the bank took the transfer to secure a loan, without knowledge or notice of the making of the deed by the vendor to the third person advancing money to the vendee, or of the bond for title made by such person to the vendee, the bank acquired an equitable interest by such transfer, and could set up, as against the third person who had advanced the money and taken a deed to secure the usurious debt, that the title so taken was infected with usury.

(*a*) If the deed to which reference has just been made was void, the bank, as the transferee of the original bond for title, would not have the right to a decree requiring the taker of such deed to execute a conveyance to it upon payment of the balance of the purchase-price due under the original contract.

(*b*) A verdict finding that there was no usury in the transaction—the evidence being substantially without conflict as to what transpired—was contrary to law.

JULY 8, 1915.

Equitable petition. Before Judge Thomas. Brooks superior court. May term, 1914.

G. Owens owned certain land in Brooks county. On November 22, 1906, he made a bond for title to Mrs. J. M. Rambo, the purchase-money being $3,200, of which $1,000 was paid in cash, and the balance was represented by five notes for $440 each, with interest at eight per cent. per annum, the first of which was due on January 1, 1908, and the others annually thereafter. This bond for title was recorded on November 30, 1906, and on October 22, 1910, it was transferred by Mrs. Rambo to the First National Bank of Quitman, to secure an indebtedness by her to it. Prior to this, on December 31, 1909, before all of the notes to Owens became due, an arrangement was made between him and Mrs. Rambo and one Wimberly, by which the debt to Owens was satisfied, a deed was made by him to Wimberly, the latter executed a bond for title to Mrs. Rambo, and she gave notes to him. The original bond was not canceled or delivered up. Owens testified that at that time the debt of Mrs. Rambo to him was about $2,100. Mrs. Rambo

testified that it was between $2,000 and $2,200. Another person calculated the amount then due as $2,172.97. Owens was willing to take $1,900 in settlement. Of this Wimberly paid $1,600 and Mrs. Rambo $300, and the matter was closed as above stated. The evidence showed that this was not a purchase by Wimberly and a resale to Mrs. Rambo, but a means by which Wimberly advanced money for Mrs. Rambo to pay Owens, and was substituted as the holder of the title to secure repayment. She gave him three notes, each dated December 31, 1909, the first for $920 due January 1, 1912, the second for $600 due January 1, 1913, and the third for $550 due January 1, 1914. Each of them bore eight per cent. interest after maturity. The bond for title executed by Wimberly was transferred by Mrs. Rambo to Powers & Company, to secure a debt due by her to them. On December 8, 1911, Wimberly loaned to Mrs. Rambo and paid to Powers & Company $250 in part payment of the indebtedness of Mrs. Rambo to them, and took her note for that amount; and an agreement was made that this was to become a part of the purchase-money described in the bond, and to be paid before title should be made to her.

The account given by Wimberly in his testimony as to the amount advanced by him and the amount of the notes given to him was substantially this: Mrs. Rambo applied to him for a loan, but only wanted to pay eight per cent. interest. The rate allowed in Florida, where he lived, was ten per cent., and he declined to let her have the money at eight. Owens proposed to discount the debt so that Wimberly would get ten per cent. for the money advanced by him, eight per cent. being paid directly by Mrs. Rambo, and the additional two per cent. from the deduction or "discount" allowed by Owens. This was agreed to. The witness then said: "I was getting a discount of about two per cent. from Mr. Owens, that is getting a discount of two per cent. on the sixteen hundred dollars. This amounts to something like one hundred and twenty-five dollars. I had Mr. Knight to figure it for me. My understanding is that I told him I was interested in $1,725." He further testified, that he lived in Florida, that Mrs. Rambo came to his home there to borrow the money, and that he there agreed to let her have it. Mrs. Rambo testified, that on December 31, 1909, Owens came to Quitman, Georgia, to draw up the papers; that she made a deed to Wimberly to the land, and she gave Wimberly notes aggregating

$2,070, principal and interest; that she told Owens that the original bond was in the Bank of Quitman; that she did not know how much interest Wimberly charged her, but understood that she was giving him notes for $1,600, and interest; that all the agreements about the contract with Wimberly were made in Florida; and that she told him that she was willing to pay ten per cent., because she knew the rate in that State was ten per cent., and he lived in Florida. She then said: "We came to Quitman because it was convenient."

It was conceded that the First National Bank of Quitman took a transfer of the bond for title of Owens, as security, without actual knowledge that Owens had made a deed to Wimberly, or that the latter had made a bond for title to Mrs. Rambo, or that it had been transferred to Powers & Company; that this is the only security held by the bank; and that Mrs. Rambo has remained in possession of the property. From copies of the papers, attached to the answer of Wimberly, it appeared that they were executed in Brooks county, Georgia.

On November 14, 1913, the bank filed an equitable petition against Mrs. Rambo and Wimberly, alleging that it had tendered to Wimberly the amount paid by him for Mrs. Rambo and demanded a deed from him, which he refused. The petition prayed for a judgment on the debt due to the plaintiff; that Wimberly be required to execute a deed to the bank; and that it have general relief. By amendment the deed from Owens to Wimberly was attacked as void for usury, and it was prayed that title to the land should be decreed to be in Mrs. Rambo, subject to the rights of the plaintiff under the bond transferred to it; and that the property be sold and the proceeds be applied to the payment of Mrs. Rambo's indebtedness to the plaintiff, and the balance as the court might direct.

The jury found for the plaintiff against Mrs. Rambo; but that the deed to Wimberly was not infected with usury, and in his favor in other respects. The plaintiff's motion for a new trial was refused, and it excepted.

*Branch & Snow*, for plaintiff. *W. H. Long*, for defendants.

LUMPKIN, J. (After stating the foregoing facts.)

1. Was the transaction controlled by the Georgia law, or did the law of Florida (which the testimony showed permitted the

charging of ten per cent. interest) apply? It appeared that Mrs. Rambo and Powers & Company lived in Brooks county, in this State, while Wimberly lived in Florida; that the land lay in Brooks county; and that the notes and other papers were there executed. It did not appear that the notes given to Wimberly were made payable at any other place, or that the contract was to be performed elsewhere than in Georgia. This was a Georgia contract, and governed by Georgia law; and the mere fact that the negotiations preliminary to the execution of the papers took place in Florida did not alter the case. Civil Code (1910), § 3430; 1 Dan. Neg. Inst. (6th ed.) § 90; *Taylor* v. *American Freehold etc. Co.*, 106 *Ga.* 238 (32 S. E. 153); *Martin* v. *Johnson*, 84 *Ga.* 481, 486 (10 S. E. 1092, 8 L. R. A. 170).

2. Section 3436 of the Civil Code (1910) declares: "It shall not be lawful for any person, company, or corporation to reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than eight per centum per annum, either directly or indirectly by way of commission for advances, discount, exchange, or by any contract or contrivance or device whatever." And section 3442 declares: "All titles to property made as a part of an usurious contract, or to evade the laws against usury, are void." According to the undisputed evidence, Owens made to Mrs. Rambo a bond for title, and she gave notes for the balance of the purchase-money. The bond was transferred to the bank as security. Wimberly agreed to take up the indebtedness and give time. It was not a purchase by him and a resale to her, but he took the title as security. The deed was made by Owens to him; but, as between the parties, it was in substance a security given by Mrs. Rambo to him. She remained in possession. The original purchase-money notes made to Owens were not transferred to Wimberly; but they were treated as paid, and a new debt was created for an advance made by Wimberly. The indebtedness due to Owens then amounted to about $2,100 or $2,200. He was willing to take $1,900 in settlement. Wimberly actually paid $1,600, and Mrs. Rambo $300. Wimberly took from her notes which included principal and interest, and which accountants testified included something more than ten per cent. interest on $1,600, the amount actually advanced by him. According to his own evidence, this was

done because he was unwilling to take eight per cent. for the use of his money, and required ten per cent. He also testified that he had a certain person figure the amount, and told such person that he was "interested in $1,725," thus giving, as a basis for calculating the amount of the indebtedness for which Mrs. Rambo was to give notes, a sum in excess of the real amount advanced for her, by him. Calling this a discount, and claiming that Wimberly was to get ten per cent. for his money, but Mrs. Rambo was to pay eight per cent., while Owens, through the medium of a so-called discount, contributed the other two per cent., was one of those diaphanous devices which the statute intended to prevent. Taking the evidence most favorably to the defendants, there was none which authorized a verdict finding such an arrangement not to be usurious. The verdict was contrary to law.

3. Under the rulings made in the preceding divisions of this opinion, the deed from Owens to Wimberly was to secure a usurious debt, and was consequently void. Instead of the land being conveyed by Owens to Mrs. Rambo and by her to Wimberly, Owens made the conveyance directly to Wimberly, the debt of Mrs. Rambo to Owens was discharged, and she gave notes to Wimberly for the amount advanced by him, with usurious interest, and took a bond for title from him. The transaction was expressly for the purpose of securing to Wimberly more than the rate of interest which could be lawfully charged under the Georgia law, and its substance was not changed by making one conveyance instead of two to accomplish that result. *National Bank of Tifton* v. *Smith,* 142 *Ga.* 663 (83 S. E. 526) ; *Sharpe* v. *Denmark,* 143 *Ga.* 156 (84 S. E. 554). Mrs. Rambo remained in possession, with the purchase-money paid to Owens. Wimberly was a creditor for the amount actually due him, but his security was lost by being infected with usury. The bank holds the bond for title executed by Owens to Mrs. Rambo and transferred to it as security. By the transfer it was subrogated to her rights thereunder, at least to the extent of the secured debt, although the bond was not a negotiable instrument in the legal sense of that expression. *Walker* v. *Maddox,* 105 *Ga.* 253 (2), 254 (31 S. E. 165). Clearly the bank has a standing in equity against her and a right to attack as void for usury a deed which it was claimed superseded and outranked the bond for title held by it.

If the deed from Owens to Wimberly was void, a decree requiring Wimberly to make a conveyance to the bank would be a non sequiter. We need not now declare in advance what would be a proper decree under the other prayers. Powers & Company were not parties, but no point was raised as to that fact by proper pleading. The verdict being contrary to law, a reversal results.

*Judgment reversed. All the Justices concur.*