**Jack GRANT, Jr., Evelyn H. Grant, and all other persons similarly situated, Plaintiffs-Appellants,**

**v.**

**GENERAL ELECTRIC CREDIT CORPORATION, Defendant-Appellee.**

**No. 83–8456.**

United States Court of Appeals, Eleventh Circuit.

July 8, 1985.

David E. Hudson, John B. Long, Augusta, Ga., for plaintiffs-appellants.

Byron Attridge, Walter W. Driver, Jr., Griffin B. Bell, Atlanta, Ga., for defendant-appellee.

James A. Brodsy, Washington, D.C., for amicus Coord. Council on Manuf. Housing Finance.

Frank Max Salinger, Amer. Fin. Ser. Assn., Washington, D.C., for amicus American Financial Services.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK *, Circuit Judges.

PER CURIAM:

This is the second of two cases taken *en banc* to determine whether the mobile home financing contracts involved satisfy certain conditions imposed by federal law that would entitle the contracts to be exempt from state law interest ceilings. By meeting the requirements of the Depository Institutions Deregulation and Monetary Control Act of 1980, Pub.L. No. 96–221, Title V, § 501, 94 Stat. 161 (1980) (codified at 12 U.S.C.A. § 1735f–7 note) (the "Act") and the regulations promulgated thereunder by the Federal Home Loan Bank Board (FHLBB), *see* 12 C.F.R. § 590.4, certain financing agreements preempt state law interest ceilings, thereby enabling creditors to charge a rate of interest in excess of state law limits.

In the other case, a panel of this Court had held that, although a contract need not contain express terms tracking the provisions of the statute or regulations to qualify for preemption, "a creditor cannot obtain the benefits of preemption if the financing agreement contains express provisions authorizing conduct *contrary* to the statute or regulations." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d

---

* Circuit Judge Thomas A. Clark, recused himself and did not participate in this decision.

1067 (11th Cir.1984). That panel opinion has now been reinstated by the *en banc* court. *Quiller v. Barclays American/Credit, Inc.,* 764 F.2d 1400 (11th Cir.1985) (en banc). In this case the Court now decides that the different contract provisions before us are not clearly contrary to the requirements of the statute and regulations, so the creditors are entitled to the benefits of federal preemption. The district court's dismissal of this action is affirmed.

### The Grants' Claim

In February 1982, plaintiffs Jack and Evelyn Grant purchased a mobile home from Hutchinson Homes, Inc. The parties entered into a retail sales installment agreement on a form contract prepared by defendant General Electric Credit Corporation (GECC), to which Hutchinson Homes assigned the contract shortly after the Grants took possession of the mobile home. The interest rate on the contract exceeded an add-on rate of 13.6%, 3.6% higher than the 10% maximum finance charge then allowed under the Georgia Motor Vehicle Sales Finance Act, O.C.G.A. §§ 10–1–30 to –38 (Michie 1982).

In March 1983, the Grants instituted a class action against GECC in federal district court alleging a violation of Georgia Usury law and seeking damages and injunctive relief. Anticipating that GECC would raise the defense that the interest rate was valid under section 501 of the federal Act, the Grants alleged that the GECC contract lacked the consumer protections required by the Act as a condition to exempting the finance charge from the state usury law interest ceilings. The district court dismissed the action as preempted by federal law.

The Grants contend the GECC contract failed to comply with the FHLBB regulations in five particulars. Four of these instances involve the following language contained in one sentence of the GECC contract:

In the event of Buyer's default in payment when due, Seller may declare immediately due and payable any and all installments due or to become due hereunder, less the unearned portion of that part of the *FINANCE CHARGE* designated as Time Price Differential calculated by the Pro-Rata Method provided that Buyer shall be given notice of right to cure default before Seller is permitted to exercise that right.

Following the holding in *Quiller,* we examine separately, in the order in which they were presented, arguments that the GECC contract is directly contrary to the federal statute and regulations.

### Right to Notice Prior to Acceleration

■ The Grants contend that the phrase "Seller may declare immediately due and payable any and all installments due or to become due hereunder ..." is a "term or condition" of the contract that fails to comply with 12 C.F.R. § 590.4(h), which states that "no action ... to accelerate payment of the entire outstanding balance of the obligation ... may be taken against the debtor until 30 days after the creditor sends the debtor a notice of default." The contract language, the Grants argue, reserves for GECC the right to declare the entire contract "immediately due and payable," contrary to the 30-day notice required by the regulations. The GECC contract contains, however, the qualifying clause "provided that Buyer shall be given notice of right to cure default before Seller is permitted to exercise that right."

As held in *Quiller,* the federal preemption statute does not require a disclosure in the contract of the notice rights given by the Act and regulations, nor does it eliminate the creditor's right to accelerate upon default. A creditor is required to send the debtor a notice of default providing a 30-day grace period during which the debtor may correct the default and continue with the contract as though the default had not occurred. 12 C.F.R. § 590.4(h). The GECC contract's qualifying clause, which is cast in mandatory terms, unambiguously informs the debtor that he or she "shall be given notice of right to cure default" before "seller is permitted" to exercise its right to accelerate. Although the contract

does not reveal that the debtor has 30 days in which to cure the default, there is no contention that notices sent to the Grants failed to notify them of the 30-day grace period. That grace period is prominently revealed in the sample notice of default and right to cure contained in the regulations. *See* 12 C.F.R. § 590.4(h)(2).

This "term or condition" of the contract is not contrary to the statute and regula-·tions governing federal preemption.

*Acceleration of the Entire Balance*

■ The Grants also contend that the acceleration provision of the contract is contrary to the following portion of the FHLBB regulations:

> In the case of default in payments, the sum stated in the notice may only include payments in default and applicable late or deferral charges. If the debtor cures the default within 30 days of the postmark of the notice and subsequently defaults a second time, the creditor shall again give notice as described above. The debtor is not entitled to notice of default more than twice in any one-year period.

12 C.F.R. § 590.4(h). The Grants argue that the contract provision allowing GECC to accelerate "all installments due or to become due hereunder, less the unearned portion of the finance charge" is contrary to the regulations.

The quoted portion of the regulations, however, refers to the content of the notice of default, not to the provisions of the contract. There is no allegation that GECC sent the Grants a notice of default with language contrary to that of 12 C.F.R. § 590.4.

*Provisions Concerning Right to Cure Default*

■ The Grants argue that because 12 C.F.R. § 590.4(h) requires that a debtor be given the right to cure any default for 30 days, and because notice of that fact must be communicated to the debtor, the GECC contract's reference to an undefined "notice of right to cure" is inadequate. Again, however, the Grants take the regulation's requirements for the notice of default and attempt to apply them to the terms of the

contract itself. The regulation does *not* provide that "no contact qualifies for preemption" unless it discloses the 30-day notice, but rather that "no action ... to accelerate ... may be taken" without the notice. 12 C.F.R. § 590.4(h); *see Quiller,* 727 F.2d at 1070. Thus, the notice section of the regulations is in direct contrast with other sections of the regulations which expressly require disclosure of certain information within the loan contract. *See* 12 C.F.R. § 590.4(d) ("The right to prepay shall be disclosed in the loan contract...."); *id.* § 590.4(f) ("No late charge may be assessed, imposed, or collected unless provided for by written contract between the creditor and debtor."). As the *Quiller* court held, 12 C.F.R. § 590.4(h) does not require creditors to recite in the loan contract the specific rights of a defaulting debtor. 727 F.2d at 1070.

*Right to Notice Prior to Repossession or Foreclosure*

■ The Grants contend that the Act itself requires that preemption contracts disclose a defaulting debtor's right to 30 days notice prior to repossession or foreclosure. The GECC contract is silent with regard to foreclosure and repossession. Thus, in the absence of express contractual terms authorizing conduct contrary to federal law, this argument is foreclosed by our holding in *Quiller* that "to qualify for federal preemption under the Act the financing agreement need not contain an express term guaranteeing the debtor thirty days notice before repossession or foreclosure." 727 F.2d at 1071.

■ Although the Grants have not claimed that the GECC contract contains terms or conditions contrary to the right to a 30-day notice prior to repossession or foreclosure, they contend that absence of any reference to that right permits the creditor to repossess without notice by operation of Georgia law. In Georgia, a creditor may repossess by self help without notice unless the contract contains a specific provision to the contrary. O.C.G.A. § 11-9-503; *see also Ford Motor Credit*

*Co. v. Hunt,* 241 Ga. 342, 245 S.E.2d 295 (1978). A creditor may also foreclose upon 7-days notice pursuant to a judicial writ of possession. O.C.G.A. § 44–14–231, –232(b). The Grants' argument fails for the simple reason that the issue before us is not what Georgia law requires, but what the federal preemption scheme requires, as there appears to be no question of fact as to whether the parties intended to enter a federal preemption contract.

We recognize that in individual cases the lack of specific contract language might allow an unscrupulous creditor to foreclose or repossess without notice by preying on consumers unaware of their notice rights under federal law or by litigating before state court judges who might interpret the agreement under Georgia law due to unfamiliarity with the complexities of the federal preemption scheme. But there is no allegation that GECC conducted its business in such a manner. Such an argument would convert the law into a disclosure act. Arguments for such a change must be addressed to the FHLBB or Congress, not to this Court.

*Right of Prepayment Without Penalty*

■ As a final challenge to the contract itself, the Grants focus on the requirement of 12 C.F.R. § 590(d):

A debtor may prepay in full or in part the unpaid balance of the loan at any time without penalty. The right to prepay shall be disclosed in the loan contract in type larger than that used for the body of the document.

The Grants argue the type size of the print was not larger than that used in the body of the contract. A review of the contract reveals that the prepayment clause is set in type clearly larger than that of the text surrounding it which comprises the "body" of the contract. Although certain headings and clauses in other parts of the contract are set in larger or bolder type, the type size used here is larger than "the body of the document" and fulfills the regulation's purpose to call attention to the provision. *See* 45 Fed.Reg. 43684 (June 30, 1980). The regulation does not require the disclo-

sure in the largest type used in the instrument.

Significantly, the version of 12 C.F.R. § 590.4(d) originally proposed by the FHLBB required that the prepayment clause be "conspicuously disclosed in the loan contract." 45 Fed.Reg. 31124 (May 5, 1980). The FHLBB replaced that phrase with the current type-size requirement because "the Board agree[d] that [the "conspicuous" requirement] may be potentially troublesome." 45 Fed.Reg. 43684 (June 30, 1980). This litigation demonstrates that the alteration in the regulations failed to eliminate "troublesome" disputes.

*Defendant's Failure to Show Loan's Entitlement to Federal Preemption*

■ As an alternative ground for reversal, the Grants urge that GECC made no showing that the financing transaction was a "federally related mortgage loan" eligible for preemption under the Act. Throughout the proceedings in the district court, however, the Grants never suggested that given an appropriate contract this financing transaction would fail to qualify for preemption. For instance, in their complaint plaintiffs admitted that "[f]ederal law would have allowed additional interest to be charged had the lender complied with certain prerequisites specified in the federal statute," and then proceeded to enumerate the alleged contractual shortcomings. The closest the Grants came to raising the "federally related mortgage loan" argument in the district court was in their opposition to GECC's motion to dismiss, which remarked:

Defendant has made no showing in that regard but assuming, for the sake of argument, that the transaction would meet the definition of a "federally-related mortgage loan," the next question is whether the terms and conditions of the credit sales contract allow it to be preempted from the state law that would normally govern.

Aside from this isolated statement, which hardly amounts to much more than conceding the issue, the Grants never mentioned, much less argued, to the district

court that their financing transaction could not come under the Act. The thrust of the complaint and other papers filed there reflect only the central argument that the "terms and conditions" of the GECC contract failed to satisfy the requirements of the Act and regulations. Having failed to raise the issue before the district court, the Grants cannot raise the issue for the first time on appeal. *See Case v. State Farm Mutual Automobile Insurance Co.*, 294 F.2d 676, 678 (5th Cir.1961).

### Conclusion

The provisions of the GECC contract before us differ significantly from those in the contract found to be contrary to the federal statute and regulations in *Quiller.* We held that the language in the *Quiller* contract inaccurately stated the creditor's rights under the federal preemption scheme by permitting the creditor (1) to foreclose on the loan "without notice;" (2) to repossess "without notice or demand for performance or legal process;" and (3) to demand payment of the full balance upon the debtor's default or the creditor's insecurity "without notice." 727 F.2d at 1072. The contract's qualification that these express contractual powers of the creditor were "subject to any notice of right to cure" was held to be vague and equivocal, and in any event, inconsistent with the three specific reservations of creditor's rights to be exercised "without notice." In contrast, GECC's contract makes no mention of the creditor's right to foreclose or repossess upon the debtor's default, nor does it purport to assume such powers in the event of the creditor's general "insecurity." The only specific reservation that GECC did make concerns the right to accelerate upon default. This right is expressly conditioned in clear, mandatory terms upon the debtor's receipt of notice of right to cure a default prior to acceleration. In sum, the affirmative misrepresentations of the debtor's federal statutory guarantees that existed in the agreement in *Quiller* are not present in the GECC contract.

Having held that the "terms and conditions" of the GECC contract satisfied the prerequisites for obtaining the protection of the Federal preemption scheme, we need not address defendant's argument that the Grants' state law claim is foreclosed by Georgia's one-year statute of limitations for usury actions. The order of the district court dismissing the Grants' complaint is therefore

AFFIRMED.

KRAVITCH, Circuit Judge, dissenting, with whom GODBOLD, Chief Judge, and VANCE, Circuit Judge, join:

I respectfully dissent. In *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067 (11th Cir.1985) (en banc), this court reinstated the panel's opinion, which held that a contract containing terms contrary to the requirements of the Depository Institutions Deregulation and Monetary Control Act, 12 U.S.C. § 1735f–7 (note), and regulations promulgated thereunder, is not entitled to the protection of federal preemption of state interest rate ceilings. In this case, the majority perceives sufficient distinctions between the language of the *Quiller* contract and the one under scrutiny here to warrant assertion of the preemption defense. Although I agree that General Electric Credit Corporation's (GECC) contract does not suffer from the same defects as the *Quiller* contract, I disagree with the majority's conclusion that GECC's contract is entitled to protection under the federal preemption scheme.

In *Quiller*, we began our analysis of the contract by admonishing that "we should examine the contract through the eyes of the typical consumer and determine whether the lender could use the terms of the contract to impose illegal burdens on a debtor with no knowledge of his statutory rights." 727 F.2d 1061 at 1071. This rule of interpretation is consistent with Congress's decision to include manufactured home financing in the preemption scheme only on the condition that consumer-debtors would enjoy certain protections under finance agreements. Further, we determined that it would be unrealistic to assume that all inaccurate statements of rights and actions taken pursuant thereto would be remedied through litigation. Although we concluded that to qualify for preemption a financing

agreement need not contain an express term guaranteeing the debtor thirty days notice prior to repossession or foreclosure, we held that contracts that affirmatively allowed a creditor to take action inconsistent with the debtor's right to notice and right to cure were not federal preemption agreements. *Id.* at 1072.

GECC's credit agreement provides in part:

In the event of Buyers' default in payment when due, Seller may declare *immediately* due and payable any and all installments due or to become due hereunder, less the unearned portion of that part of the FINANCE CHARGE designated as Time Price Deferential calculated by the Pro-Rata Method *provided that Buyer shall be given notice of right to cure default before Seller is permitted to exercise that right....*

(emphasis in italics added). Because the contract grants the creditor the right, upon default, to accelerate immediately payment of any or all installments, it is contrary to 12 C.F.R. § 590.4(h), which prohibits initiation of any action to accelerate payments until 30 days after the creditor sends the debtor a notice of default and right to cure. Further, section 590.4(h) provides that the "sum stated in the notice of default may only include payments in default and applicable late or deferral charges...." A provision allowing *all* future payments to become due *immediately* upon default is thus an inaccurate statement of the credi-

tor's rights, in that under section 590.4(h), the debtor has the right to cure the default, by paying the amount in default plus any late charges, *before* the creditor may accelerate payments.

The majority relies on the qualifying clause ("provided that Buyer shall be given notice of right to cure default before Seller is permitted to exercise that right") to conclude that the contract unambiguously informs the debtor of the right to cure the default before the creditor may accelerate payments. Although this provision is not as vague or equivocal as the qualifying clause in the *Quiller* contract, 727 F.2d at 1071–72, in my view it fails to remedy the inaccurate statement of rights already conveyed by the agreement. Read as a whole, the challenged passage could be fairly construed by a consumer-debtor to transmit conflicting messages: the creditor's right to declare immediately upon default that all installments are due, and the debtor's right to cure before the creditor exercises that right. Moreover, there is no explanation that the right to cure means paying only the amount in default plus any late charge. As the majority observes, there is no requirement that this be explained in the contract; yet, given the creditor's right under the contract to accelerate immediately upon default, the unexplained right to cure fails to offer a statement sufficient to qualify the agreement as a preemption contract.[1] As in the *Quiller* contract, a debtor who reads this provision may receive an accurate impression of his or her rights

---

**1.** In an effort to reconcile the GECC contract with section 590.4(h), the majority explains that the portion of the regulation setting forth the amount due upon default refers only to the notice of default, not to provisions that must be contained in a preemption contract. 727 F.2d at 1070. I believe the majority overlooks the fact that the agreement grants the creditor the right to accelerate payments immediately upon default. The regulation provides that the sum stated in the notice of default may not exceed the amount in default plus an applicable late charge; thus, a creditor is forbidden to accelerate payments immediately upon default of one payment. The debtor must have the opportunity to cure by paying the amount stated in the notice of default.

Twice the majority observes that there is no allegation that GECC sent the Grants a notice

of default that contradicted the form set forth in the regulations. 727 F.2d at 1071. This ignores *Quiller's* focus on the language of the agreement. To await the creditor's actual performance upon default would allow a creditor who drafts a contract that contradicts every right granted to the consumer-debtor by the regulations to claim a preemption defense if there is no effort to enforce the unlawful provisions. We would not know, however, whether the creditor attempted to enforce the unlawful provision unless the debtor filed a lawsuit. As we observed in *Quiller*, "It would be unrealistic to assume that every illegal act will be corrected through litigation." 727 F.2d at 1071 (citing *General Finance Corp. of Georgia v. Sprouse*, 577 F.2d 989 (5th Cir.1978)).

upon default, if he or she had independent knowledge of the applicable statute and regulations. Absent this, however, a debtor could easily conclude that the creditor can accelerate immediately upon default, subject to some unspecified right to cure. At best, the language of the agreement is ambiguous.[2]

The focus of our *Quiller* decision was to prevent creditors from exercising leverage over unwary consumer-debtors faced with default. Congress sought to ensure that consumer-debtors would not immediately lose their homes upon the failure to tender a single payment on time, by guaranteeing the debtors' right to cure and right to notice before repossession, foreclosure or acceleration. I do not believe that GECC's credit agreement fulfills this purpose. Accordingly, I would hold that the GECC contract is not entitled to the benefits of federal preemption.

---

**2.** Language, of course, can be inherently ambiguous, and some debtors may not understand their rights under an agreement no matter how clear the terms. Nonetheless, although the statute and regulations do not require that certain provisions be set forth explicitly in an agreement, the onus is on the creditor who wishes to claim the preemption defense to draft a document that does not contradict rights guaranteed by the regulations. When doing so, the creditor must employ language that makes the contract readily understandable by a reasonable consumer-debtor. *Quiller*, 727 F.2d at 1071. *Cf. Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir.1985) (to determine whether Fair Debt Collection Practices Act has been violated, court is obligated to decide whether least sophisticated consumer would be deceived, mislead, or harassed by creditor's actions).