**Whildon L. MOYER, et al.,**
**Plaintiffs-Appellees,**

v.

**CITICORP HOMEOWNERS, INC., et al.,**
**Defendants-Appellants.**

No. 84–8166.

United States Court of Appeals,
Eleventh Circuit.

Sept. 22, 1986.

Rehearing and Rehearing En Banc Denied
Oct. 24, 1986.

Michael J. Templeton, Hansell & Post, W. Rhett Tanner, Atlanta, Ga., for defendants-appellants.

John B. Long, David E. Hudson, Thomas W. Tucker, Augusta, Ga., for plaintiffs-appellees.

Before TJOFLAT and KRAVITCH, Circuit Judges, and DUMBAULD *, Senior District Judge.

TJOFLAT, Circuit Judge:

This interlocutory appeal [1] is from a decision of the district court holding the interest rates of three retail installment contracts for the purchase of mobile homes usurious under Georgia law. As to two of the contracts, the court rejected the lenders' argument that federal law preempted Georgia law and authorized the interest rates charged. With respect to the third contract, the court refused to apply South Carolina's usury law, which also would have authorized the interest rate charged. We disagree with the district court's treatment of the federal preemption issue and accordingly reverse its decision on this point. We affirm, however, the court's application of Georgia law to the third contract.

## I.

In the late 1970's, the interest rates permitted under the usury laws of many states were so far below the interest rates called for by free market forces as to make housing unavailable to many who needed mortgage financing. In an effort to cure this problem and to permit financiers to charge the interest rates commanded in the free market, Congress, in 1980, enacted the Depository Institutions Deregulation and Monetary Control Act, Pub.L. No. 96–221, tit. V., § 501, 94 Stat. 161 (1980) (codified at 12 U.S.C. § 1735f–7 note (1982)) (DIDMCA). *See* S.Rep. No. 368, 96 Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Ad. News 236, 254. Section 501(a)(1) of DIDMCA expressly preempts all state laws that limit the interest rate [2] chargeable in connection with loans [3] creating first liens on residential real property and mobile homes, [4] provided that the terms and conditions of such loans comply with regulations promulgated by the Federal Home Loan Bank Board (Bank Board). [5]

### A.

In 1981, two married couples from Georgia, the Sanderses and the Harrisons, purchased mobile homes from a dealer in Thomson, Georgia. They paid part of the purchase price in cash and financed the balance, giving the dealer a first lien on the purchased mobile homes by executing a retail installment contract. The contracts provided for interest rates in excess of the rate allowed by the Georgia Motor Vehicle Sales Finance Act, O.C.G.A. §§ 10–1–30 to

---

* Honorable Edward Dumbauld, Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

1. *See* 28 U.S.C. § 1292(b) (1982).

2. DIDMCA covers "interest, discount points, finance charges or other charges which may be charged, taken, received, or reserved." Section 501(a)(1).

3. DIDMCA applies to loans, mortgages, credit sales, or advances. Section 501(a)(1).

4. DIDMCA specifically exempts from state usury laws credit transactions "secured by a first lien on residential real property, by a first lien on stock in a residential cooperative housing corporation where the loan, mortgage, or advance is used to finance the acquisition of such stock, or by a first lien on a residential manufactured home." Section 501(a)(1)(A).

5. Section 501(a)(1)(B) of DIDMCA provides that the statute applies to all credit transactions entered into after March 31, 1980.

10–1–38 (1982) (MVSFA). The dealer sought to avoid the application of MVSFA by having the buyers execute retail installment contracts that recited that they were made in compliance with federal law,[6] presumably DIDMCA. The dealer assigned the contracts to Citicorp Homeowners, Inc., which, in turn, assigned them to Citicorp Acceptance Co., Inc. (collectively, "Citicorp").

### B.

In June 1981, the Moyers, citizens of South Carolina, entered into a retail installment sales contract with an Augusta, Georgia dealer for the purchase of a mobile home. The contract provided for an interest rate in excess of that allowed by MVSFA but permitted under South Carolina law. Apparently in an effort to ensure that South Carolina's usury law would govern the transaction, the dealer had the Moyers execute a form contract that conformed to South Carolina law.[7] The contract provided, however, that it would be governed by the law of the state of the dealer's residence; in this instance, the dealer resided in Georgia. Nothing in the contract indicated that it had been drafted so as to comply with DIDMCA. After the contract was executed, the dealer assigned it to Citicorp.

### II.

On March 22, 1983, the Sanderses, Harrisons, and Moyers (collectively "buyers" or "debtors"), invoking the district court's diversity jurisdiction,[8] 28 U.S.C. § 1332 (1982), joined forces and filed this class action suit against Citicorp in the United States District Court for the Southern District of Georgia. They alleged that the interest rates they were paying Citicorp violated Georgia's usury law, MVSFA, and asked the court to enjoin Citicorp from collecting the interest due under their contracts.[9] They also sought the recovery of the penalty provided in section 10–1–38(c) of MVSFA: "double the time price differential and any delinquency charge and any attorneys' fees and court costs charged and paid with respect to such" contracts.[10] The

**6.** The contracts are captioned "GEORGIA MOBILE HOME RETAIL INSTALLMENT CONTRACT AND DISCLOSURES MADE IN COMPLIANCE WITH FEDERAL LAW."

**7.** The contract was captioned "SOUTH CAROLINA MOBILE HOME RETAIL INSTALLMENT CONTRACT."

**8.** Citicorp is incorporated in Delaware and has its principal places of business in Missouri and New York. As noted in the text *supra,* the Sanderses and Harrisons are citizens of Georgia; the Moyers are citizens of South Carolina.

**9.** Subsequent to the filing of this action, MVSFA was partially superseded by O.C.G.A. §§ 7–4–3, 7–4–5 (Supp.1985). In addition, certain sections of MVSFA have recently been amended. *See* O.C.G.A. §§ 10–1–32, 10–1–33, 10–1–36.1 (Supp. 1985). None of these superseding statutes or amendments, however, have any relevance to the issues presently before us. *See infra* note 10.

**10.** At the time this suit was initiated, the penalty for violation of MVSFA was a prohibition against recovery of any finance charge, delinquency, or collection charge on the contract, or in the case of a "willful" violation, a minimum of $100.00 or double the time price differential. O.C.G.A. § 10–1–38(b), (c) (1982). Nine days after the commencement of this suit, however,

MVSFA was partially superseded by a new statute which removed all finance charge limitations on mobile home retail installment sales contracts on mobile home sales of $3,000.00 or more, provided that such contracts contain the provisions required by section 501(c) of DIDMCA. O.C.G.A. § 7–4–3 (Supp.1985). If the contract does not include such provisions, the financier is liable for the "actual damage" (which is not defined) sustained by the debtor plus twice the amount of any interest or finance charge specified in the contract not to exceed $1,000.00. O.C.G.A. §§ 7–4–3(b)(2), 7–4–5(a) (Supp.1985). Citicorp argues that the new statutory scheme should be applied if it is found liable to the debtors. We decline to rule on this issue, however, because the matter of damages is not properly before us. We granted leave to appeal from the district court's ruling that interest charged the debtors was usurious. Since the district court did not pass on the issue of damages, it would be inappropriate for us to consider the issue at this time.

Neither party argues that the liability provision of section 7–4–3(b)(1) should have been applied by the district court in lieu of section 10–1–33(a). This is understandable given the fact that under either statute Citicorp would be liable if the contracts did not satisfy the regulations promulgated by the Bank Board pursuant to DIDMCA. We, therefore, make no ruling as to which liability provision should apply.

debtors sought the above relief in behalf of all persons who had executed similar contracts assigned to Citicorp.

Citicorp, in its answer, alleged that the Sanders and Harrison contracts complied with DIDMCA and the regulations promulgated by the Bank Board; consequently, the interest charged was permissible. As for the Moyer contract, Citicorp alleged that South Carolina law, which allowed the contracted interest rate, controlled. After the parties filed cross motions for summary judgment, the district court granted the debtors' motion on the issue of liability only, making the following rulings. First, the Sanders and Harrison contracts failed to comply with two of the Bank Board's regulations, 12 C.F.R. §§ 590.4(d), (h) (1985), and thus were subject to Georgia's usury law. The contracts did not comply with section 590.4(d), because the contracts' provision concerning the debtors' right to prepay the balance of the debt without penalty was not disclosed in type larger than that used in the body of the documents. The contracts did not comply with section 590.4(h), because they contained language that could be interpreted as eliminating the debtors' right under that section to receive notification thirty days prior to foreclosure, repossession, or acceleration of the debt.

Second, the district court rejected Citicorp's contention that South Carolina law governed the Moyer contract. The court reasoned that Georgia law applied for two reasons: the contract had been made and performed in Georgia,[11] and it provided that the law of the state of the dealer's residence, i.e., Georgia, would control its enforcement.

The district court, pursuant to 28 U.S.C. § 1292(b) (1982), certified that its order granting partial summary judgment involved a controlling question of law as to which there was substantial ground for difference of opinion and that an immediate

appeal would materially advance the ultimate termination of the cause, and we granted leave to appeal. At the time it entered the order now before us, the district court, in a separate order, certified two plaintiff classes. The propriety of this certification is not involved in this appeal.

In the discussion that follows, we first address the question of whether the Sanders and Harrison contracts satisfied the Bank Board's regulations, and therefore DIDMCA. We then address the question of whether the Moyer contract is controlled by the usury law of South Carolina or Georgia.

### A.

#### 1.

To avoid a state's usury laws, a lender must provide in his loan statement that "debtor may prepay in full or in part the unpaid balance of the loan at any time without penalty." 12 C.F.R. § 590.4(d) (1985). "The right to prepay shall be disclosed in the loan contract in type larger than that used for the body of the document." *Id.* The debtors' right to prepay without penalty is set out on the face of the Sanders and Harrison contracts. The district court, however, found that words in both the body of the documents and the prepayment clause were of the same *point* type size and accordingly ruled that the contracts did not satisfy section 590.4(d).[12] We view the district court's interpretation of the regulation as unduly narrow.

As we noted in our en banc decision in *Grant v. General Electric Credit Corp.,* 764 F.2d 1404, 1408 (11th Cir.1985) (en banc) (per curiam), the Bank Board's originally proposed version of section 590.4(d) required that the prepayment clause be "conspicuously disclosed in the loan contract." 45 Fed.Reg. 31,124 (1980). The Board eventually employed the current

---

**11.** Payments under the Moyer contract were made to Citicorp in Atlanta, Georgia.

**12.** A point is a unit used to measure the size of type and is equivalent to approximately ½₂ inch. The trial judge found the type in the

prepayment clause and the body of the contracts to contain 17 spaces to the inch. The debtors filed with the district court the affidavit of a commercial printer who stated that this clause and the body of the contracts were both in nine-point type.

type-size language because it believed that the "conspicuously disclosed" standard "may be potentially troublesome." 45 Fed. Reg. 43,684 (1980). It is clear that the current regulation is intended to require a creditor to set out the prepayment clause in such a way as to bring the clause to the debtor's attention. The Bank Board determined that larger type would accomplish this result. Nothing in the language or history of section 590.4(d), however, suggests that the prepayment clause be in a larger *point* type than the type used in the body of the document. The type in the prepayment clause of the Sanders and Harrison contracts, while perhaps of the same point type as the type used in the body of the contracts, is still "larger" than the type in the body of the contracts for the purposes of section 590.4(d). The disclosure clause is printed in boldface type; each letter of the clause is wider than those appearing in the body of the contracts. In addition, most of the initial letters of each word in the clause are capitalized, in contrast to the initial letters of the words in the body of the contracts which are only capitalized if they begin a sentence or certain significant terms. These distinguishing factors serve to bring the prepayment clause to the attention of the debtor;[13] we therefore hold that the Sanders and Harrison contracts satisfy section 590.4(d).[14]

**2.**

Section 590.4(h)(1) provides that "no action to repossess or foreclose, or to accelerate payment of the entire outstanding balance of the obligation may be taken against the debtor until 30 days after the creditor sends the debtor a notice of default."[15] We have noted in *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1070–71 (11th Cir.), *reh'g en banc granted*, 727 F.2d 1072 (1984), *reinstated en banc*, 764 F.2d 1400 (1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986), that the regulation does not require that a contract contain a clause expressly guaranteeing the debtor thirty days' notice prior to acceleration or foreclosure. *See also Grant v. General Electric Credit Corp.*, 764 F.2d at 1407.[16] Where a contract contains terms that are inconsistent with the notice requirement of section 590.4(h), however, the contract is not in compliance with the regulation and cannot qualify for federal preemption under DIDMCA. *Quiller*, 727 F.2d at 1071. We must therefore examine the Sanders and Harrison contracts to determine whether they contain terms inconsistent with the thirty-day notice requirement of section 590.4(h).

The documents in question twice refer to the buyers' right to be notified and to cure in the event of a default. On the face of each contract is the following provision concerning the seller's right of acceleration: "Seller may, Subject to Buyer's

---

**13.** The attention of the debtor is further focused on the prepayment clause by the fact that in the Sanders and Harrison contracts it is the first substantive term that appears in the documents. In addition, the debtors' right to prepay without penalty is reiterated in the body of the contracts.

**14.** Our interpretation of section 590.4(d) is shared by the Bank Board's general counsel who, upon submission by Citicorp, examined the Sanders and Harrison contracts and concluded that they satisfied section 590.4(d).

**15.** 12 C.F.R. 590.4(h)(1) (1985) provides:

(h) *Notice before repossession, foreclosure, or acceleration.* (1) Except in the case of abandonment or other extreme circumstances, no action to repossess or foreclose, or to accelerate payment of the entire outstanding balance of the obligation, may be taken against the debtor until 30 days after the cred-

itor sends the debtor a notice of default in the form set forth in paragraph (h)(2) of this section. Such notice shall be sent by registered or certified mail with return receipt requested. In the case of default on payments, the sum stated in the notice may only include payments in default and applicable late or deferral charges. If the debtor cures the default within 30 days of the postmark of the notice and subsequently defaults a second time, the creditor shall again give notice as described above. The debtor is not entitled to notice of default more than twice in any one-year period.

**16.** Although the Sanders and Harrison contracts did not detail the debtors' notice rights under section 590.4(h), both contracts, as observed *supra* note 6, were captioned in bold letters, "GEORGIA MOBILE HOME RETAIL INSTALLMENT CONTRACT AND DISCLOSURES MADE IN COMPLIANCE WITH FEDERAL LAW."

Right of Notice and Right to Cure, accelerate the unpaid balance of the Total of Payments less earned charges computed according to the pro rata method upon default in payment of all installment or other obligations provided herein." The following provision appears on the back of each contract:

> Subject to Buyer's Right to Notice of Default and Right to Cure such default, if any, whenever a default shall occur, or at any time thereafter, (such default not having previously been cured) Seller may declare the unpaid balance of the total of payments plus accrued charges, less any required refund of unearned charges due and payable and Seller shall have all the remedies of a secured party under the Uniform Commercial Code. If any notice is required by the Uniform Commercial Code, such notice shall be deemed reasonably and properly given if mailed, postage prepaid to the address of the Buyer shown in the section entitled, "Address of Buyer After Receipt of Possession of Collateral" at least five (5) days before the event with respect to which notice is required. (Emphasis added.)

The district court held that this provision is inconsistent with the notice requirement of section 590.4(h). We find no such inconsistency.

The notice provision on the face of the contracts is in harmony with section 590.4(h), for it clearly requires as a condition precedent to the seller's right to accelerate that the buyer be given notice and the opportunity to cure. Further, there is nothing in the provision that suggests that such rights are not those enumerated in the federal regulations. Nor is the provision on the back of the contracts inconsistent with section 590.4(h). Like the one on the face of the contracts, this provision expressly conditions the seller's rights of acceleration and forfeiture on the satisfaction of the buyers' right of notice and right to cure. The district court, however, held that the language on the back of the contracts indicating that, where notice is required by the Uniform Commercial Code (U.C.C.), five days will be considered reasonable notice is inconsistent with the thirty-day notice required by section 590.4(h). We do not share this view.

The U.C.C. simply does not contain any notice requirement prior to foreclosure, repossession, or acceleration. Thus, the contract provision defining five days as reasonable notice in those instances where the U.C.C. requires notice is inapplicable to the foreclosure, repossession, or acceleration situation and does not conflict with section 590.4(h). The only pertinent notice requirement in the U.C.C.'s treatment of secured transactions provides that, in the case of *disposition* of the collateral *after* foreclosure, "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor." O.C.G.A. § 11–9–504(3) (1982).[17] The Sanders and Harrison contracts define "reasonable notification" as five days. The incorporation into these contracts of such a definition of the notification provisions contained in section 11–9–504(3) is not inconsistent with the federal notice requirement, because the latter speaks only to procedures to be followed *prior* to foreclosure; section 11–9–504(3) applies only *after* the creditor has

---

17. The U.C.C. does not, absent an agreement between the creditor and debtor, require any notification to a debtor as a prerequisite to a creditor's taking possession of the collateral. See O.C.G.A. § 11–9–503 (1982). As to the Sanders and Harrison contracts, the creditor and the debtors agreed that the creditor could foreclose on the collateral only after giving the debtors 30 days' notice and a chance to cure. The debtors argue that, because section 11–9–503 allows such agreements, the 30–day notice agreement becomes a part of the section such that it must be viewed as being required by the U.C.C. This being the case, they contend, the language on the back of the contracts stating that, for the purpose of any notice required by the U.C.C., five days notice will be considered reasonable is inconsistent with the 30–day notice provisions of section 590.4(h). This argument fails to distinguish between conduct that is permitted by a statute and conduct that is required by that statute. Although section 11–9–503 would not invalidate a notice agreement between a creditor and a debtor, it is an unacceptable overstatement to maintain that the section *requires* that the debtor be given notice prior to foreclosure.

taken possession of the collateral. Accordingly, we hold that the Sanders and Harrison contracts satisfy section 590.4(h).

### B.

Citicorp concedes that the Moyer contract does not satisfy the requirements of DIDMCA and that as a result the contract is subject to state law. Citicorp justifies the interest rate it has been collecting by relying on South Carolina law, which allows the rate. It contends that the trial court erred in applying Georgia rather than South Carolina law to the contract. We find no trial court error.

■ The contract was executed and made payable in Georgia. In addition, the contract contained a choice of law provision indicating that the contract shall be construed in accordance with the laws of the state in which the seller's place of business is located. The Moyers purchased their mobile home from a Georgia dealer. To get around this choice of law provision Citicorp relies on a choice of law rule that, it contends, Georgia courts have applied in usury cases. It argues that in such cases a contract will be upheld against the charge of usury if it provides for a rate of interest that is permissible in a state with which the contract has a substantial relationship. See Restatement (Second) of Conflict of Laws § 203 (1971). The Moyer contract, Citicorp maintains, has a substantial relationship with South Carolina,[18] a state that would enforce the contract; therefore, its laws should govern the contract.

Citicorp does not persuade us. Even were we to assume that the Georgia courts would apply the Restatement rule,[19] it does not follow that South Carolina law should govern the contract at hand. Citicorp ignores the crucial fact that the contract, which it drafted, in effect calls for the application of Georgia law. Given this choice of law provision, we find it difficult to accommodate Citicorp's argument that South Carolina law should be applied.

It is true that "[a] choice of law by the parties will not secure application of a law that would not otherwise be applicable to sustain a contract against the charge of usury." Restatement § 203 comment e. This rule is designed to protect a debtor from an overreaching creditor who seeks to secure the application of a more favorable law of a state having no substantial relationship with the contract. Id. Such policy considerations, however, are not relevant to the present inquiry. In this instance, the parties have agreed that the law of Georgia, a state clearly having a substantial relationship to the contract, should control. Moreover, in this case the creditor

18. Citicorp supports its contention with the following observations: (1) the Moyers are citizens of South Carolina; (2) the contract is captioned "SOUTH CAROLINA MOBILE HOME RETAIL INSTALLMENT CONTRACT"; (3) the contract is identified on the bottom of the left-hand portion as "SOUTH CAROLINA–16 CITICORP HOMEOWNERS, INC. 4180"; (4) the contract notifies the buyers to report to the South Carolina Chief Insurance Commissioner any attempt to require the buyer to purchase insurance covering the mobile home from any particular insurance agent or company; (5) the contract notifies the buyers that no policy of hazard insurance issued or delivered to cover a mobile home located in South Carolina shall provide for a policy period in excess of three years; (6) the contract makes reference to the 20–day notice of default required by the South Carolina Uniform Commercial Credit Code.

19. Georgia case law does not seem to support this assumption. Citicorp has failed to present us, nor have we been able to discover, any Georgia case that has applied the Restatement rule. There do exist cases where the law of a

state that would uphold the contract against the charge of usury was applied in favor of the law of a state that would not enforce the contract, but in such cases either the contract was executed and performed in the state whose law was applied, or the parties explicitly provided in the contract that the laws of that state would apply. See Byrd v. Equitable Life Assurance Soc'y., 185 Ga. 628, 196 S.E. 63, 70 (1938) (enforcing clause in contract which provided for application of Georgia law); First Nat'l Bank v. Rambo, 143 Ga. 665, 85 S.E. 840, 842 (1915) (applying law of state where contract executed and performed); Clark v. Transouth Fin. Corp., 142 Ga.App. 389, 236 S.E.2d 135, 136–37 (1977) (applying South Carolina law where contract executed and performed in that state and parties provided that interest on prepayment was to be computed in accordance with South Carolina law); Liberty Loan Corp. v. Crowder, 116 Ga.App. 280, 157 S.E.2d 52, 53 (1967) (applying Alabama law where contract executed and performed in that state).

has agreed to the application of laws more favorable to the debtor; the parties' choice of law in this case would not "sustain a contract from the charge of usury" but would render the contract usurious. Thus, the problem of creditor overreaching is not presented. We, therefore, see no reason not to enforce the contract's choice of law provision.[20]'

## III.

In conclusion, we hold that federal law preempts the application of MVSFA to the

---

**20.** Citicorp asserts two principal state law defenses against the debtors' claims. First, they argue that a debtor has no cause of action under MVSFA until he has paid back the entire principal due under the contract. The Moyers at the time the suit was filed had not paid all of the principal due under their contract. For this reason, Citicorp maintains that the trial court erred in refusing to dismiss their claim. We find no support for this contention in either MVSFA or Georgia case law. MVSFA nowhere provides that as a prerequisite for bringing a successful action under the statute a debtor must pay the principal due under the installment contract. The cases cited by Citicorp, *Citizens & Southern South DeKalb Bank v. Watkins*, 236 Ga. 759, 225 S.E.2d 266 (1976) and *I.D.S. Homes Corp. v. Lucas*, 228 Ga. 521, 186 S.E.2d 745 (1972), neither of which involved an application of MVSFA, addressed situations in which the debtor sought an injunction halting foreclosure proceedings against a deed securing a usurious note. The Georgia Supreme Court in both instances held that, to obtain equitable relief, such as an injunction preventing foreclosure, a debtor must first pay the principal sum due under the note. *Watkins*, 236 Ga. at 762–63, 236 S.E.2d at 268; *Lucas*, 228 Ga. at 521–22, 186 S.E.2d at 745–46. These cases are clearly distinguishable from the action before us in that the Moyers were not granted equitable remedies; the remedies sought were explicitly enumerated in MVSFA. We have found no case that would support the requirement that Citicorp seeks to have imposed on a debtor bringing an action under MVSFA. In fact, the decision in *Bozeman v. Tifton Fed. Sav. & Loan Ass'n*, 164 Ga.App. 260, 297 S.E.2d 49 (1982), implicitly rejects Citicorp's contention. In *Bozeman*, the court applied MVSFA to cause the forfeiture of the entire finance charge under an installment contract even though the debtor at the time the suit was brought owed a principal sum of $9,040.70. *Id.* at 262–63, 297 S.E.2d at 52; *see also Ford Motor Credit Co. v. Spann*, 153 Ga.App. 535, 265 S.E.2d 863, 865 (1980). Accordingly, we reject Citicorp's argument on this point.

Citicorp further maintains that the Moyers' action was barred by the statute of limitations. The Moyers entered into their installment contract on June 10, 1981, approximately one year and nine months prior to the commencement of suit. Although MVSFA contains no statute of limitations provisions, Citicorp argues that the trial judge erred in refusing to dismiss the Moy-

ers' claim pursuant to O.C.G.A. § 7–4–10(d) (1982), which provides that actions for the recovery of forfeited interest due under a usurious contract must be brought within one year. *See Family Home Serv. Inc. v. Taylor*, 142 Ga. App. 386, 236 S.E.2d 28, 29 (1977). Alternatively, Citicorp urges us to apply O.C.G.A. § 9–3–28 (1982) ("[A]ctions by informers to recover any fine, forfeiture, or penalty shall be commenced within one year from the time defendant's liability thereto is discovered"). The Moyers contend that either O.C.G.A. § 9–3–22 (1982) ("[A]ctions for the enforcement of rights accruing to individuals under statutes or acts of incorporation or by operation of law shall be brought within 20 years") or O.C.G.A. § 9–3–26 (1982) ("[A]ctions upon contracts express or implied not otherwise provided for shall be brought within four years") should be applied.

We need not determine which of these statutes governs the present case, because, even if we were to apply the one year limitations period urged by Citicorp, the Moyers' claim would not be barred. Citicorp argues that MVSFA actions must be brought within one year of the making of the contract upon which the suit is brought. Treating MVSFA actions as suits alleging usury, it maintains that, because all damages are determinable at the time of contracting, such a one-year period is reasonable. Citicorp, however, ignores the ongoing nature of a usury violation; payments on a usurious contract extend well beyond one year. In Georgia, an action seeking forfeiture of interest on a usurious loan is timely if it is brought within twelve months of the interest payments which are sought to be recovered. *Hartsfield Co. v. Watkins*, 67 Ga.App. 411, 20 S.E.2d 440, 441–42 (1942). Thus, only the recovery of interest paid by the debtor more than one year prior to the initiation of the action would be barred by the statute of limitations. Further, as debtors may seek the forfeiture of interest contracted for but not yet paid, *see Duderwicz v. Sweetwater Sav. Ass'n.*, 595 F.2d 1008, 1013–14 (5th Cir.1979) (interpreting Georgia law), it is clear that a one-year statute of limitations cannot bar a suit seeking to avoid future interest payments. In addition, while payments made one year prior to the filing of an action may not be recoverable, they may be claimed as credits upon the principal sum loaned. *See Reconstruction Fin. Corp. v. Puckett*, 181 Ga. 288, 181 S.E. 861, 865 (1935). We, therefore, find no trial court error in refusing to dismiss the Moyers' claim as barred by the stat-

Sanders and Harrison contracts and reverse the district court's ruling to the contrary. We affirm the court's determination that Georgia law governs the enforcement of the Moyer contract.

AFFIRMED in part; REVERSED in part.

KRAVITCH, Circuit Judge, dissenting:

I respectfully dissent from section A2 of the majority's opinion which determines that the district court erred by holding the contract inconsistent with the notice requirements of the Depository Institutions Deregulation and Monetary Control Act, 12 U.S.C. § 1735f-7 note (DIDMCA). In *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067 (11th Cir.1984), *reinstated en banc*, 764 F.2d 1400 (11th Cir. 1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986), we recognized that federal law did not require that a contract explicitly inform a debtor of his right to thirty days notice prior to foreclosure in order for a creditor to avoid state usury laws under the DIDMCA. We held, nonetheless, that a contract containing terms contrary to the DIDMCA does not entitle a creditor to the benefits of federal preemption. 727 F.2d at 1071; *see also Grant v. General Electric Credit Corp.*, 764 F.2d 1404, 1406 (11th Cir.1985) (en banc) (creditors entitled to benefits of federal preemption where contract provisions

"not clearly contrary" to DIDMCA), *cert. denied*, —— U.S. ——, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986).

Although a contract need not include the thirty day foreclosure notice, the contract should not be ambiguous or misleading as to foreclosure notice. In *Quiller*, 727 F.2d at 1071, we relied on *General Finance Corp. v. Sprouse*, 577 F.2d 989 (5th Cir. 1978).[1] *Sprouse* teaches that courts must interpret agreements subject to consumer protection legislation in light of the operation of the contract in the commercial world, the effect upon a consumer unfamiliar with legal rights and the risk that a lender might take advantage of ambiguous provisions. *Id.* at 993. The rationale of *Sprouse* is that "[i]t is naive to assume that every controversy culminates in litigation." *Id.*[2] As in all contract cases, we must construe ambiguities against the drafter, *Landale Enterprises, Inc. v. Berry*, 676 F.2d 506 (11th Cir.1982), and in agreements subject to consumer protection legislation, we must accord contract provisions the interpretation a reasonable consumer would give them. *Quiller*, 727 F.2d at 1071; *Sprouse*, 577 F.2d at 993.

The only notice provision in the instant contract is on the back of the document. While it states that foreclosure and acceleration of payments are "[s]ubject to Buyer's

ute of limitations. Citicorp's remaining defenses to the Moyers' claim are meritless.

1. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

2. In the present case, the district court's oral findings of fact, based on uncontroverted evidence, amply illustrate abuses contemplated by *Quiller* and *Sprouse*. The district court found:
   Here we have a situation where the lender has gone somewhat further than a situation where it has merely attempted [as in *Quiller*] to utilize contractual provisions which are contrary to the statute and regulations. We have a situation where the lender through its operatives has gone beyond the contract and demanded immediate possession and taken action by telephone to repossess and to foreclose.

The district court found that Citicorp's agents engaged in a "definite pattern" of threatening repossession and foreclosure with no prior notice whatsoever. During the course of telephone conversations with debtors, Glenda Burris, a collection agent, would call out to coworkers to "put some axles on the truck" indicating that, at her direction, a truck was departing at that moment to foreclose on the debtor's mobile home. In several instances debtors were told that their personal belongings would be taken along with their homes. Several debtors fled their homes after these calls. None of these debtors received the federally required thirty days written notice of foreclosure.

Unlike *Sprouse* and *Quiller*, which addressed the hypothetical abuse of contract provisions inconsistent with consumer protection legislation, the instant case presents actual abuse of contract provisions whose ambiguities are exploited by creditors in a manner directly contrary to federal regulations.

Right to Notice of Default and Right to Cure" it further states that the seller enjoys the remedies of a secured party under the Uniform Commercial Code (U.C.C.) and where the U.C.C. requires notice, "such notice shall be deemed reasonably and properly given if mailed ... at least five (5) days before the event with respect to which notice is required." The majority concludes that this provision is consistent with the DIDMCA because the U.C.C. provisions address the notice that must be provided before foreclosed collateral may be disposed of whereas the DIDMCA regulations mandate only that thirty days notice precede foreclosure and acceleration of payments.[3] As such, the majority tacitly assumes that consumers have an intimate working knowledge of the U.C.C. and will realize that the only notice period explicitly enumerated in their contracts applies to the disposal of foreclosed collateral and not to foreclosure itself. The uncontroverted evidence, however, as found by the district court, demonstrates that neither debtors nor Citicorp's agents construe the contract as the majority does: Citicorp's agents have attempted to foreclose with no prior notice whatsoever.

In my view, the foreclosure notice provision is patently inconsistent with *Quiller*,

*Sprouse* and the spirit of the DIDMCA.[4] The clause is ambiguous and misleading. A consumer would reasonably construe it as providing, at most, five days foreclosure notice. Fundamental rules of contract interpretation require us to construe the contract's ambiguities against its drafters. I agree with the district court: the notice provisions here are inconsistent with the requirements of the DIDMCA and the creditors cannot, therefore, benefit from federal preemption of state usury laws. Although the U.C.C. is a masterpiece of legal craftsmanship, we should not assume that consumers are versed in its intricacies and therefore not misled by contract provisions readily interpretable and actually exploited in a manner inconsistent with consumer protection legislation.

---

**3.** O.C.G.A. § 11-9-503 (1982), Georgia's codification of U.C.C. § 9-503, provides in part:
Unless otherwise agreed a secured party has on default the right to take possession of the collateral.
The majority contends that the contract provision setting U.C.C. *required* notice at five days does not apply to § 9-503 foreclosure notice because § 9-503 *permits*, but does not *require*, notice prior to foreclosure.
I do not share the majority's narrow reading of § 9-503. A fair application of that section here is: where parties agree that thirty days notice will precede foreclosure, then that notice is a prerequisite to foreclosure. By invoking the DIDMCA, Citicorp has agreed to provide thirty days notice prior to foreclosure. It is not overstating § 9-503 by interpreting it as requiring pre-foreclosure notice where a creditor has so agreed. Therefore, I would hold that Citicorp's provision setting U.C.C. notice at five days is explicitly contrary to the requirements of the DIDMCA.

**4.** The DIDMCA provides for simplification of Truth-In-Lending Act disclosures and encouraged the promulgation of model forms for common credit transactions in order to achieve further clarity. S.Rep. No. 368, 96th Cong., 2nd Sess. 16-17, 25-26 reprinted in 1980 U.S.Code Cong. & Ad. News 236, 251-52, 260-61. Pursuant to § 501 of the DIDMCA, federal regulations provide a default notification form for use in all but extreme cases such as property abandonment or repeated default. 12 C.F.R. § 590.4(h). The form explicitly sets out the thirty day right to cure. Congress went to great lengths in the Truth-In-Lending Act and the DIDMCA to ensure that debtors are fully aware of the protections afforded them by federal law. The congressional goal of clarity and consumer awareness in credit contracts is ill served by the majority's conclusion that the provision before us is consistent with the DIDMCA.