**John T. ATKINSON, Jr., Marie Atkinson, Homer L. Ogden, Plaintiffs–Appellants,**

v.

**GENERAL ELECTRIC CREDIT CORP., Defendant–Appellee.**

No. 87–8869.

United States Court of Appeals, Eleventh Circuit.

Feb. 21, 1989.

Rehearings Denied March 27, 1989.

David Hudson, Hull, Towill, Norman & Barrett, P.C., Thomas W. Tucker, Dye, Miller, Tucker & Everitt, John B. Long, Nixon, Yow, Waller & Capers, Augusta, Ga., for plaintiff-appellant.

Gary J. Toman, King & Spalding, Byron Attridge, Atlanta, Ga., Wyck A. Knox, Jr., Knox & Zacks, Augusta, Ga., for defendant-appellee.

Before TJOFLAT and KRAVITCH, Circuit Judges, and PAINE *, District Judge.

PER CURIAM:

On October 12, 1982, John and Marie Atkinson, the appellants, entered into a retail installment contract to purchase a new mobile home from Herli Homes, Inc. in Augusta, Georgia. The contract was written on a form provided by General Electric Credit Corp. (GECC), the appellee, and was subsequently assigned by Herli Homes to GECC. The contract provided for finance charges at a rate exceeding that allowed by the Georgia Motor Vehicle Sales Finance Act. Ga.Code Ann. § 10-1-33 (1982). The charges were, however, within the rate allowed under the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA), Pub.L. No. 96-221, § 501(c), 94 Stat. 132, 162 (codified at 12 U.S.C. § 1735f-7 (1982)). DIDMCA expressly preempts all state laws that limit the interest rate chargeable in connection with loans creating first liens on residential real property and mobile homes, provided the terms and conditions of the loans comply with regulations promulgated by the Federal Home Loan Bank Board (FHLBB). *See Moyer v. Citicorp Homeowners, Inc.,* 799 F.2d 1445, 1446 (11th Cir.1986).

On May 4, 1987, the Atkinsons brought this suit against GECC. In their complaint, they alleged that the terms and conditions of their contract with Herli Homes did not comply with an FHLBB regulation, specifically 12 C.F.R. § 590.4(h) (1988), which provides that "no action to repossess or foreclose, or to accelerate payment of the entire outstanding balance of the obligation, may be taken against the debtor until 30 days after the creditor sends the debtor a notice of default"; the Atkinsons therefore asked the court to declare the contract interest rate usurious under Georgia law.[1] GECC moved to dismiss the complaint on the ground that the contract complied with the requirements of 12 C.F.R. § 590.4(h). The district court granted GECC's motion and dismissed the complaint. The Atkinsons now appeal. We affirm.

## I.

As noted, state usury laws are preempted under DIDMCA when the contract meets the requirements of the FHLBB's regulations. Stated another way, the question is whether the "financing agreement contains express provisions authorizing conduct *contrary* to the ... regulations." *Quiller v. Barclays American/Credit, Inc.,* 727 F.2d 1067, 1071 (11th Cir.) (emphasis in original), *reh'g en banc granted,* 727 F.2d 1072 (1984), *reinstated en banc,* 764 F.2d 1400 (1985), *cert. denied,* 476 U.S. 1124, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986).

---

* Honorable James C. Paine, U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The Atkinsons' complaint contained three counts. The first count, which invoked the district court's diversity jurisdiction, sought class action relief—principally the forfeiture of all finance charges paid, or to be paid, to GECC—on behalf of persons who purchased mobile homes in Georgia pursuant to the same form contract the Atkinsons had signed. The second count, which invoked the court's federal question jurisdiction, sought relief for the same class under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.* (1982 & Supp. IV 1986), by charging excessive finance charges in violation of 18 U.S.C. §§ 1341, 1343 (1982). The third count, which replicated count one, sought relief under state law on behalf of those who bought mobile homes in other states pursuant to the same GECC form contract. The district court dismissed the case without certifying a class with respect to any of these counts. The court's failure to certify is not an issue in this appeal, nor is its dismissal of counts two and three. This opinion therefore addresses only the sufficiency of the count one claim brought by the Atkinsons.

We have addressed this question in the context of section 590.4(h)'s notice of default and right to cure requirement in three cases. In *Quiller*, we held that the contract did not qualify for preemption because it expressly foreclosed the giving of notice.[2] At the same time, we pointed out that to satisfy section 590.4(h), the contract did not have to "contain an express term guaranteeing the debtor thirty days notice before repossession or foreclosure." *Id.* at 1071. In *Grant v. General Electric Credit Corp.*, 764 F.2d 1404 (11th Cir.1985) (en banc), we held that contract language specifying that "Buyer shall be given notice of right to cure default before Seller is permitted to exercise that right" was sufficient to establish preemption. *Id.* at 1406. Similarly, in *Moyer v. Citicorp Homeowners, Inc.*, 799 F.2d 1445 (11th Cir.1986), we found preemption even though the contract did not expressly provide for notice but only that the creditor's rights were "Subject to Buyer's Right to Notice of Default and Right to Cure such default, *if any.*" *Id.* at 1450 (emphasis added).

## II.

Interpretation of the disputed contract language in this case is more complex than in *Quiller, Grant,* and *Moyer* because two separate contract provisions are involved. The first states that:

Should Buyer fail to make payment when due or otherwise fail to perform any obligation or covenant under this contract, Seller may pursue any rights and remedies available to Seller under the law to include repossession and or acceleration of Buyer's indebtedness hereunder, provided that Buyer shall be given a notice of right to cure the default if required by applicable law, before Seller may exercise such right.

The second provision, a choice-of-law clause, which is separated from the first provision by several unrelated terms and conditions, states:

2. The contract provided as follows:
the full balance may, upon election of the Holder, without notice, subject to any notice of right to cure, become due and payable ... and Holder may, without notice or demand

GOVERNING LAW: Buyer and Seller agree that construction and interpretation of the provisions hereof will be governed by the laws of the State of Georgia.

The language of the first provision appears to be indistinguishable from the challenged language in *Moyer.* The language here qualified the buyer's right to notice by the phrase "if required by applicable law"; the language in *Moyer* similarly qualifies the buyer's right to notice by the phrase "if any." Appellants argue, however, that because of the second provision, which states that Georgia law governs the construction and interpretation of the contract, the "applicable law" referred to in the first provision must be Georgia law as opposed to federal law—specifically, 12 C.F.R. § 590.4(h). Since Georgia law requires no notice for self-help repossession and only seven days' notice for judicial repossession, the appellants argue that the contract authorizes conduct contrary to the thirty-day notice requirement of section 590.4(h).

We believe that such a reading of the contract is misleading. Because the seller of the mobile home intended to charge appellants an interest rate that would be permissible under DIDMCA preemption, a more reasonable interpretation of the contract is that the choice-of-law provision was intended to govern contract matters not covered by DIDMCA. As the Supreme Court has observed, providing that a contract is to be governed by "state law does not signify the inapplicability of federal law, for 'a fundamental principle in our system of complex national polity' mandates that 'the Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution.'" *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157, 102 S.Ct. 3014, 3024, 73 L.Ed.2d 664 (1982) (quoting *Hauenstein v. Lynham*, 100 U.S. 483, 490, 25 L.Ed. 628

for performance or legal process, peaceably enter any premises ... where the Collateral may be found, [and] peaceably take possession of it.
*Quiller,* 727 F.2d at 1071–72.

(1879)). Accordingly, in the case before us, the parties' choice of Georgia law to provide the rules of contract construction did not automatically bar the application of federal law.

 It is readily apparent that the parties intended that DIDMCA apply, so to permit the seller, and subsequently GECC, to charge a higher rate of interest. The question then becomes whether the contract's notice of default and right to cure provision and its choice-of-law clause, taken together, can be deemed contrary to section 590.4(h)'s requirements, so as to foreclose DIDMCA preemption. We conclude that they cannot.

The notice provision plainly meets section 590.4(h)'s requirement because it makes the seller give the buyers notice of their right to cure a default as a condition precedent to repossession or acceleration of the indebtedness—"if required by applicable law." Section 590.4(h), the applicable law, does not mandate that a financing agreement specify the precise notice to be given; in fact, in some circumstances, section 590.-4(h) allows a creditor to repossess or accelerate the indebtedness without giving any notice.[3]

In addition, no inconsistency exists in applying both DIDMCA and Georgia law. Since Georgia law includes federal law, as long as the FHLBB regulations are met, DIDMCA should apply to those aspects of the contract it addresses. The situation in this case is similar to that in *Moyer*. In *Moyer*, we construed a contract which stated that a creditor's rights were "Subject to Buyer's Right to Notice of Default and Right to Cure such default, if any," followed immediately by a statement that the seller had all the remedies of a secured party under the Uniform Commercial Code, under which five days' notice was sufficient. We concluded that such a provision was not contrary to section 590.4(h) because the Uniform Commercial Code spoke only to procedures to be followed *after*

seizure had taken place, while the FHLBB regulation went to notice *prior* to foreclosure. *Moyer*, 799 F.2d at 1450.

Similarly, in this case, the two provisions are not contradictory since the choice-of-law clause was intended to govern all matters not covered by the federal law. In fact, the FHLBB regulations acknowledge that they do not cover many aspects of the contract and that these should be governed by state law. *See* 12 C.F.R. § 590.4(b)(2)(i)(A) (1988).

Since no contradiction exists between the FHLBB regulations and the application of the Georgia law under the choice-of-law clause, DIDMCA applies and the interest rate is not usurious. The judgment of the district court is, therefore,

AFFIRMED.

---

**3.** Under section 590.4(h), in the case of abandonment or other extreme circumstances, or where the buyer has already had two notices of default within a one-year period, 30 days' notice to the buyer with a right to cure is not required before repossession or acceleration of the indebtedness.