**Mark BURRIS, Louise Grider and Lilla Smythe, Plaintiffs,**

v.

**FIRST FINANCIAL CORPORATION and Home Owners Funding Corporation of America, Defendants.**

**No. LR–C–88–446.**

United States District Court, E.D. Arkansas, W.D.

March 22, 1990.

Ken Cook, Ivester, Skinner & Camp, P.A., Little Rock, Ark., and Gus Camp, Piggott, Ark., for plaintiffs.

George Pike, Friday, Eldredge & Clark, Little Rock, Ark., for defendant First Financial Corp.

Peter Kumpe and Philip S. Anderson, Wright, Lindsey and Jennings, Little Rock, Ark., for defendant Home Owners Funding Corp. of America.

### ORDER

ROY, District Judge.

Before the Court are the Motion to Dismiss of defendant First Financial Corporation ("First Financial") and the Motion to Dismiss or in the Alternative for Summary Judgment of defendant Home Owners Funding Corporation of America ("HOFCA"), to both of which plaintiffs have responded. The Court will dispose of both motions and any supplements thereto in this Order.

Plaintiffs are persons who have entered into mobile home retail installment sales contracts in which one or both of the defendants allegedly have an interest. In their complaint, Plaintiffs contend that under the law of the State of Arkansas, which they assert is controlling herein, the rate of interest charged by defendants on these sales contracts is usurious. Plaintiffs seek money damages from defendants and certain other declaratory relief on behalf of themselves and all others similarly situated.

Defendants deny that Arkansas law governs the rate of interest which may be lawfully charged on the installment sales contracts in question. They contend that with respect to these contracts Arkansas law is preempted by the Veterans Administration ("VA") and Farmers Home Administration ("FHA") preemption statutes, 38 U.S.C. § 1828 and 12 U.S.C. § 1735f–7, and section 501 of the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDMCA"), Public Law 96–221, March 31, 1980 and 12 C.F.R. 590.4 *et seq.*,

one or more of which defendants claim apply herein. Plaintiff Burris has a VA guaranteed loan, while plaintiffs Grider and Smythe have conventional loans. On account of the difference in the character of these loans, the Court must address them separately in determining the merits of defendants' motions.

On May 23, 1984, Burris entered into a mobile home retail installment sales contract with Smoot Mobile Home Sales. The contract was apparently prepared by and later assigned to defendant First Financial, who subsequently assigned it to Government National Mortgage Association ("GNMA"). Still later, GNMA contracted with defendant HOFCA to service the contract.

The rate of interest chargeable on VA loans is governed by certain federal laws related thereto, among them 38 U.S.C. § 1828, which in essence provides that if loans insured under Title I and Title II of the National Housing Act are exempt from state usury limits, then loans guaranteed under 38 U.S.C. §§ 1801 *et seq.* are also exempt from such provisions. As reflected in 12 U.S.C. § 1703, Title I of the National Housing Act includes mobile home loans within the class of insurable loans. Thus, pursuant to § 1828, defendants are at first blush entitled to invoke federal preemption of Arkansas' usury limits with respect to the interest charged on Burris' loan. The Court must look further to ascertain if any other federal or state law, or a combination thereof, strips the cloak of federal preemption from Burris' loan.

The legislative history reveals that Congress passed the VA and FHA preemption statutes cited above in late 1979 to address problems with the availability of government insured loans brought on by high market interest rates and low state usury limits. *See* S.Rep. No. 260, 96th Cong., 1st Sess. 30, *reprinted in* 1979 U.S.Code Cong. & Ad.News 1894, 1916. However, under both the VA and the FHA exemption provisions, "the State's right to set an interest-

rate limitation that overrides the Federal exemption would be preserved." S.Rep. No. 260, *supra*, at 31, 1979 U.S.Code Cong. & Ad.News at 1917. To address the desire for a coordinated Federal policy in this area, the VA statutory scheme provides that any state override of the exemption for FHA loans will also override the exemption for VA loans. Under the FHA provision, the federal exemption "shall apply to loans, mortgages, or advances made or executed in any State until the effective date (after December 21, 1979) of a provision of law of that State limiting the rate or amount of interest, discount points, or other charges on any such loan, mortgage or advance." 12 U.S.C. § 1735f–7(b).

■ Within four months of the passage of the VA and FHA exemptions, Congress enacted section 501 of DIDMCA (codified as amended at 12 U.S.C. § 1735f–7 note), yet another federal preemption provision. This statute is of a much broader scope than the VA and FHA provisions, applying not only to federally insured loans but to all home loans, including conventional loans, which are in some manner "federally related," as that term is broadly defined in section 501. In order for the DIDMCA exemption to apply to mobile home financing, with which we are concerned here, the financing contract must contain certain consumer protection provisions specified in Federal Home Loan Bank Board ("FHLBB") regulations.[1]

■ In 1982, the State of Arkansas adopted Amendment 60 to the Arkansas Constitution (now found at Ark. Const. Art. 19, § 13), which provides that "[t]he maximum lawful rate of interest on any contract entered into after the effective date hereof shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract." Ark. Const. Art. 19, § 13(a)(i). However, the amendment also states that "[t]he provisions hereof are not intended and shall not be deemed to supersede or otherwise invalidate any provisions of federal law ap-

---

1. These include, *inter alia*, late charges only when a payment is 15 days late, and 30 days notice before acceleration or foreclosure.

plicable to loans or interest rates including loans secured by residential real property." Ark. Const. Art. 19, § 13(d)(ii).

Plaintiff Burris contends that none of the federal preemption provisions are available to defendants with respect to his loan. Burris claims that the VA exemption provision does not apply to his financing contract because of Arkansas' adoption of Amendment 60, which limits the maximum lawful rate of interest which may be charged on any contract, subsequent to the enactment of 12 U.S.C. § 1735f–7(b). Burris argues that override of the exemption is automatic upon a state's passage of any law limiting interest rates and that the provision in Amendment 60 that no federal provisions should be deemed invalidated by the amendment is, thus, without any legal significance as to the issues herein. Burris also contends that in light of the enactment of the DIDMCA exemption subsequent to the FHA and VA provisions, defendants must have complied with all of the DIDMCA requirements with respect to his financing contract in order for any of the federal exemptions to apply.

In response, defendants correctly assert that by its express terms Amendment 60 does not override or invalidate the FHA or VA preemption provisions. Defendants cite the case of *Doyle v. Southern Guaranty Corporation*, 795 F.2d 907 (11th Cir. 1986), *cert. denied*, 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987), in support of their position. In *Doyle*, the court heard consolidated actions in which FHA and VA-insured mobile home agreements were challenged as usurious. In finding that the FHA and VA exemptions were overridden by the State of Georgia's amendment of its usury limits on mobile home transactions, the Eleventh Circuit stated that "given Congress' deference to states' rights to fix their own usury law, ... when a state reenacts or raises its usury limit on a particular class of loans, it overrides the FHA and VA preemptions for that type of loan in the absence of a contrary statement." *Doyle*, 795 F.2d at 914.

In reliance upon *Doyle*, defendants argue that a different result should obtain here

because of the inclusion of the express provision in Amendment 60 that no federal law applicable to loans or interest rates should be deemed superseded or invalidated by any other provision therein. Although noting that there is some overlap among DIDMCA and the FHA and VA preemptions, the Eleventh Circuit also found that "FHA or VA lenders may obtain federal preemption under the respective FHA or VA preemption without also satisfying the DIDMCA requirements." *Doyle*, 795 F.2d at 911.

After careful consideration, the Court finds that the FHA and VA exemptions were not overridden by Arkansas' adoption of Amendment 60 in 1982. By its express terms, the amendment was not intended to "supersede or otherwise invalidate any provisions of federal law applicable to loans or interest rates including loans secured by residential real property." Thus, Arkansas chose not to reassert a limit on the rate or amount of interest which could lawfully be charged on the class of loans and mortgages covered by the FHA and VA exemptions. The automatic override urged by Burris simply did not occur. This Court is not going to engage in a strained, mechanical and, in the Court's view, flawed interpretation of the law which would undermine the clear intent of the State of Arkansas in adopting Amendment 60. Such an approach would also run counter to the acknowledged deference of Congress to states' rights to fix their own usury law.

■ Nor does the Court find any merit in Burris' argument that defendants must have complied with all of the DIDMCA requirements in order to avail themselves of any of the federal exemptions. The Eleventh Circuit stated in *Doyle:*

At the time the FHA and VA preemptions were enacted, DIDMCA was well through the congressional committee process. It simply defies reason that Congress would enact one preemption if it were considering a second preemption which would render the first meaningless. This Court holds that a lender entitled to preemption under the FHA or VA

statutes need not comply with the DIDM-CA regulations.

795 F.2d at 912. This Court hereby adopts both the reasoning and the holding of the Eleventh Circuit in *Doyle* with respect to this issue.

■ Based upon all of the foregoing, the Court finds that defendants' motions to dismiss the claims of plaintiff Burris should be, and they are hereby, granted. Burris' claims against defendants shall be dismissed. The Court will now turn to the claims of plaintiffs Grider and Smythe.

On June 17, 1985, Grider entered into a purchase agreement and mobile home retail installment sales contract with Lochridge Mobile Homes. The contract was in large measure prepared by and was subsequently assigned to First Financial. On September 16, 1985, Smythe entered into a mobile home retail installment sales contract with Crews Mobile Homes. Her contract, too, was in large measure prepared by and was subsequently assigned to First Financial. In their Second Amended Complaint, plaintiffs allege that both of these contracts were ultimately transferred or assigned to or serviced by HOFCA.

In response, however, HOFCA asserts through the supplemental affidavit of Stephen W. Leon, its Senior Vice President, Government Programs and Administration, that it has "never serviced, owned, held or received an assignment or transfer of the retail installment contracts of Louise Grider and Lilla Smythe." Plaintiffs admit in their response to the supplemental affidavit that they have no information to contradict this assertion. It is, thus, clear that defendant HOFCA is entitled to judgment as a matter of law upon the claims of Grider and Smythe. HOFCA's motion for summary judgment upon the claims of Grider and Smythe should be, and it is hereby, granted.

■ As noted previously, Grider and Smythe have conventional loans with defendant First Financial. In response to plaintiffs' claims that these loans as written are usurious under Arkansas law, First Financial asserts that Arkansas law does not govern these transactions and that it is protected by the federal preemption provided in section 501 of DIDMCA. Plaintiffs, however, argue that First Financial may not rely upon section 501 due to its failure in its contracts to comply with all DIDMCA "consumer protection" requirements, including, but not limited to, provisions as to prepayment, late payments, default, cure, acceleration of the balance due, and foreclosure. First Financial denies plaintiffs' claims that its contracts are not in compliance with DIDMCA.

The Court has carefully considered all of plaintiffs' claims concerning the alleged deficiencies in First Financial's contracts and First Financial's responses thereto. First Financial has cited several cases from the Eleventh Circuit in which most of these issues were addressed. *See Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067 (11th Cir.1984), *rehearing en banc granted*, 727 F.2d 1072 (1984), *restated en banc*, 764 F.2d 1400 (1985), *cert. denied*, 476 U.S. 1124, 106 S.Ct. 1992, 1993, 90 L.Ed.2d 673 (1986); *Grant v. General Electric Credit Corp.*, 764 F.2d 1404 (11th Cir. 1985) *en banc, cert. denied* 476 U.S. 1124, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986); *Moyer v. Citicorp Homeowners, Inc.*, 799 F.2d 1445 (11th Cir.1986). The Court finds considerable precedential value in these cases. In light of the Court's decision to follow the holdings in these cases and the Court's determination that First Financial's arguments in its supplemental brief filed November 13, 1989 are persuasive on all issues presented with respect to the DIDMCA requirements, the Court is of the opinion that a lengthy analysis and discussion of these issues would serve no useful purpose herein. Suffice it to say that after careful review the Court finds that the contracts in question are not violative of the DIDMCA requirements and that First Financial is entitled to rely upon the preemption provided in section 501. It must follow, then, that plaintiffs Grider and Smythe have stated no legally cognizable claims against First Financial. Accordingly, First Financial's motion to dismiss the claims of Grider and Smythe should be, and

it is hereby, granted.[2]

■ Inasmuch as the Court has found that neither Burris, Grider nor Smythe has a cognizable individual claim for relief against either HOFCA or First Financial, none of them may serve as a class representative in a class action suit. *See O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *McArthur v. Camelot Inn*, 513 F.Supp. 343 (E.D.Ark. 1980). Thus, this matter shall be dismissed in its entirety.

2. To the extent that the Court has relied upon the contracts or other materials outside the pleadings, the Court has considered this a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. All parties have been given a reasonable opportunity to present all materials pertinent to this motion.