Mark **BURRIS**, Louise Grider, and Lilla Smythe, Appellants,

v.

**FIRST FINANCIAL CORPORATION, and Home Owners Funding Corporation of America, Appellees.**

No. 90–1677EA.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1991.

Decided March 20, 1991.

Herman Ivester, Little Rock, Ark., for appellants.

F. John Istre, III, Waco, Tex., for appellees.

Before MAGILL, Circuit Judge, ROSS, Senior Circuit Judge and HUNTER,* Senior District Judge.

---

ELMO B. HUNTER, Senior District Judge.

This is a class action suit filed by Mark Burris, who alleged that First Financial Corporation ("FFC") and Home Owners Funding Corporation of America ("HOFCA") had charged and were charging Burris and other members of the putative class of mobile home purchasers, finance charges in excess of those permitted by Arkansas law. The Complaint was then amended to add Louise Grider and Lilla Smythe, who also purchased mobile homes and entered into retail installment contracts on form contracts prepared by FFC. Jurisdiction of the district court[1] was invoked under 28 U.S.C. § 1332 and under 28 U.S.C. § 1331 for claims arising under 18 U.S.C. § 1961, *et seq.* Jurisdiction of this Court is invoked under 28 U.S.C. § 1291.

Plaintiff Mark Burris purchased a mobile home from and entered into a retail installment sales contract with Smoot Mobile Home Sales of Marmaduke, Arkansas, on May 23, 1984. The installment sales contract was on a form contract prepared by and assigned to FFC. The contract was guaranteed by the Veteran's Administration ("VA") and was subsequently transferred to HOFCA for servicing and other purposes. The contract provided for an interest rate in excess of the Arkansas usury limit.

Grider entered into a purchase agreement and retail installment sales contract with Lochridge Homes, Inc., of North Little Rock, Arkansas, on June 17, 1985. Smythe entered into a manufactured home retail installment sales contract with Crews Mobile Homes of Jacksonville, Arkansas, on September 16, 1985. These contracts were assigned to FFC, but were not guaranteed by the VA nor the Federal Housing Authority ("FHA") and were not transferred to HOFCA.

Defendants moved for summary judgment based on federal preemption and fail-

---

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Elsijane T. Roy, United States District Court for the Eastern District of Arkansas.

ure to state a claim. The district court granted the motions to dismiss Burris based on determinations that the Arkansas usury limit was preempted by provisions of federal law applicable to VA guaranteed loans; that such preemption had not been overridden by Arkansas' adoption of Amendment 60 to its Constitution; and that the VA guaranteed contract was not required to comply with Depository Institutions Deregulation and Monetary Control Act ("DIDMCA") provisions to qualify for federal preemption. The court dismissed the claims of Grider and Smythe as to HOFCA because HOFCA did not hold or service their contracts. The court dismissed the claims of Grider and Smythe against FFC based on a finding that the contracts complied with the provisions of DIDMCA and therefore qualified for federal preemption. 733 F.Supp. 1270. From that judgment, plaintiffs appeal. The judgment of the district court is AFFIRMED.

## I.

■ Plaintiff Burris asserts that the district court erred in holding that Arkansas' adoption of Amendment 60 [2] in 1982 did not override FHA/VA preemption provisions. The district court correctly held that Arkansas' adoption of Amendment 60 in 1982 did not override FHA/VA preemption provisions.[3] State usury laws limiting the rate of interest which may be charged on FHA insured loans are preempted by 12 U.S.C.A. § 1735f-7. State usury laws limiting the rate of interest which may be charged on VA guaranteed loans are preempted by 38 U.S.C.A. § 1828.[4] In 1980, shortly after the enactment of the FHA and VA preemption statutes, DIDMCA was enacted and codified as amended at 12 U.S.C.A. § 1735f-7. DIDMCA preempts state usury laws limiting the rate of interest which may be charged on not only FHA insured and VA guaranteed loans, but also conven-

tional loans which are "federally related." 12 C.F.R. § 590.2(b).

The FHA and VA preemptions apply "to loans, mortgages, or advances made or executed in any State until the effective date (after December 21, 1979) of a provision of law of that State limiting the rate or amount of interest, discount points or other charges on any such loan, mortgage or advance." 12 U.S.C.A. § 1735f-7(b). This is precisely what happened with the adoption of Amendment 60 in 1982:

> The maximum lawful rate of interest on any contract entered into after the effective date hereof shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract.

Ark. Const., Art. 19, § 13(a)(i). Plaintiff argues that Amendment 60 says it is applicable to "any contract," but, plaintiff, in essence, ignores the remainder of Amendment 60, which states that its provisions "are not intended and shall not be deemed to supersede or otherwise invalidate any provisions of federal law applicable to loans or interest rates including loans secured by residential real property." Ark. Const., Art. 19, § 13(d)(ii).

"The Court determines, given Congress' deference to states' rights to fix their own usury law, * * * that when a state reacts or raises its usury limit on a particular class of loans, it overrides the FHA and VA preemptions for that type of loan in the absence of a contrary statement." *Doyle v. Southern Guaranty Corporation*, 795 F.2d 907, 914 (11th Cir.1986), *cert. denied*, 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987). The phrase "in the absence of a contrary statement" is not contrary to the FHA preemption statutes as plaintiff contends. Arkansas specifically stated that its Amendment 60 was not intended to "supersede or otherwise invalidate any provisions of federal law applicable to loans." This provision of Amendment 60 is contrary to

---

**2.** Codified at Arkansas Constitution, Art. 19, § 13.

**3.** This issue relates only to the VA guaranteed contract of Burris and not to the non-FHA/VA guaranteed contracts of Grider and Smythe.

**4.** Both statutes were enacted in 1979. The VA preemption statute makes the VA preemption the same as the FHA preemption. S.Rep. No. 260, 96th Cong., 1st Sess. 29, *reprinted in* 1979 U.S.Code Cong. & Ad.News 1894, 1915.

an intent to override FHA and VA preemptions.

In *In re Lawson Square, Inc.*, 816 F.2d 1236, 1240 (8th Cir.1987), the court held that Amendment 60 did not override the federal preemption of interest rate limits contained in DIDMCA. The court stated that the legislature and voters of Arkansas had the opportunity to override DIDMCA when they considered Amendment 60 in 1982, but instead of reasserting a State usury limit on mortgage interest rates, that amendment included a section which specifically endorsed the federal preemption. *Id.* The Eighth Circuit's reasoning in this DIDMCA case is equally applicable to FHA and VA preemption statutes. Amendment 60 expressly contains a statement "contrary" to the overriding of the FHA and VA preemptions, thus Arkansas' adoption of Amendment 60 did not override the FHA/VA preemption provisions.

## II.

■ Plaintiff Burris contends that the district court erred in holding that creditors need not comply with all of DIDMCA's provisions in order to avail themselves of any of the federal preemption provisions. Plaintiff cites 12 U.S.C. §§ 1735f–7 and 1735f–5(b) for the proposition that DIDMCA applies to any federally related mortgage loan, and from that plaintiff concludes that it is applicable to FHA and VA loans.[5]

The district court correctly followed *Doyle*, 795 F.2d 907, which plaintiff argues was incorrectly decided, and held that a lender entitled to preemption under the FHA or VA preemption statutes need not comply with DIDMCA regulations. The court noted that the FHA and VA preemption statutes and DIDMCA were enacted in a six month time span, and at the time the FHA and VA preemption statutes were enacted, DIDMCA was "well through the congressional committee process. It simply defies reason that Congress would enact one preemption if it were considering a second preemption which would render the first meaningless." "This court holds that a lender entitled to preemption under the FHA or VA preemption statute need not comply with the DIDMCA regulations." *Id.*

The Eleventh Circuit traced the legislative history leading up to and following passage of each of the preemption statutes and concluded that:

> although the DIDMCA statute encompasses the "federally related" mobile home loans involved in this case and therefore overlaps with the FHA and VA preemptions, this dual coverage does not nullify the FHA and VA preemptions as applied to mobile home loans. FHA or VA lenders may obtain federal preemption under the respective FHA or VA preemption without also satisfying the DIDMCA requirements * * * * It is unreasonable to believe that Congress, in addressing the more immediate concern of FHA and VA loan availability to individual borrowers, would require the lender to comply with the additional DIDMCA regulations in order to obtain federal preemption * * * * [The Eleventh Circuit noted several following points supporting its holding.] First, Section 529 of DIDMCA repealed certain existing laws but made no mention of the FHA or VA preemption statutes. Second, Section 528 of DIDMCA demonstrates that Congress intended to retain independent vitality in the respective statutory schemes. Finally, a HUD opinion letter supports this interpretation.

*Id.* at 911–12. The HUD opinion letter referred to in *Doyle, id.* at 912, is an April 1, 1985, letter from Shirley Wiseman, General Deputy Assistant Secretary of Housing, stating "[i]t was then, and is now, this Department's interpretation of the two preemption laws that they are separate and independent of each other, and that if a manufactured home lender can charge a preemptive interest rate pursuant to 529 of the National Housing Act it need not rely upon Section 501 of the Deregulation Act [DIDMCA], and thus need not comply with 12 C.F.R. 590.4." The holding of the Elev-

---

5. This issue relates only to the VA guaranteed loan of Burris.

enth Circuit in *Doyle* with respect to this issue is sound and applicable to this case. A lender entitled to preemption under the FHA or VA statutes need not comply with DIDMCA regulations.

## III.

■ Plaintiffs Smythe and Grider contend that the district court erred in holding that the contracts in question complied with three DIDMCA provisions.[6] Plaintiffs assert that the contracts reserve remedies for the creditors which are not permitted by DIDMCA and 12 C.F.R. § 590.4(h)(1), which provides, in pertinent part:

> Except in the case of abandonment or other extreme circumstances, no action to repossess or foreclose, or to accelerate payment of the entire outstanding balance of the obligation, may be taken against the debtor until 30 days after the creditor sends the debtor a notice of default in the form set forth in Paragraph (h)(2) of this section* * * *

Paragraph 11 of the contract provides: If debtor defaults in performing any obligation herein, Creditor after providing Debtor with the notice and opportunity to cure required by applicable statutes or regulations, may accelerate the maturity of any part or all of the amount owing hereunder.

Plaintiffs argue Paragraph 11 does not comply with DIDMCA because 12 C.F.R. § 590.4(h)(1) requires creditors to specifically recite the borrower's right to 30 days notice when the contract refers to a notice. Plaintiffs do not argue that the contract must contain a notice, but rather, if it contains a notice, it must specifically recite the borrower's right to 30 days notice. Plaintiffs further argue that this paragraph allows repossession, foreclosure or acceleration without notice.

Neither DIDMCA nor 12 C.F.R. § 590.4(h) require the contract to recite the debtor's right to notice. To satisfy 12 C.F.R. § 590.4(h) and qualify for federal

preemption, a contract need not "contain an express term guaranteeing the debtor thirty days notice before repossession or foreclosure." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1071 (11th Cir.1984), *adhered to, en banc*, 764 F.2d 1400 (1985), *cert. denied*, 476 U.S. 1124, 106 S.Ct. 1992, 90 L.Ed.2d 673 (1986). In *Grant v. General Electric Credit Corp.*, 764 F.2d 1404, 1406 (11th Cir.1985) *cert. denied*, 476 U.S. 1124, 106 S.Ct. 1993, 90 L.Ed.2d 673 (1986), the court held that contract language specifying that "Buyer shall be given notice of right to cure default before Seller is permitted to exercise that right" is sufficient to establish preemption. *See also Moyer v. Citicorp Homeowners, Inc.*, 799 F.2d 1445 (11th Cir.1986) and *Atkinson v. General Electric Credit Corp.*, 866 F.2d 396 (11th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989).

The Federal Home Loan Bank Board, which drafted 12 C.F.R. § 590.4(h), agrees that DIDMCA regulations do not require that the debtor's right to 30 days notice be recited in the contract. An opinion letter of the Board's general counsel dated October 28, 1982, states:

> This requirement [§ 590.4(h)(1)] refers only to the act of giving notice; neither paragraph (h) nor the Congressional legislation that it implements [DIDMCA] * * * expressly requires that a covered credit agreement recite the purchaser-borrower's right to notice. Furthermore, there are no legislative or regulatory history materials suggesting that either Congress or the Board intended an implicit requirement of a contractual notice provision. If a contractual notice provision requirement had been intended, it is reasonable to assume that the Board would have expressly so provided, as it did in paragraphs (d) (prepayment without penalty), (e) (terms of balloon payments), (f) (late charges), and (g) (agreements for deferral of fees) of § 590.4. In light of these considerations, it is the

---

6. Because the FHA and VA preemptions were not overridden by Arkansas' adoption of Amendment 60 in 1982 and because a lender entitled to preemption under the FHA and VA preemption statutes need not comply with the DIDMCA regulations, this issue relates only to the conventional loans of Smythe and Grider.

view of this Office that § 590.4(h) does not require that the terms of a manufactured home credit sale agreement recite the purchaser's right to thirty days' notice of acceleration or repossession.

5 Fed.Banking L.Rep., Paragraph 82,027 (1983). Paragraph 11 clearly complies with the notice provisions of DIDMCA, in that it refers to applicable statutes and regulations. 12 C.F.R. § 590.4(h), which states that no action to repossess or foreclose or to accelerate payment may be taken until 30 days after notice of default has been given, is obviously a regulation contemplated by the contracts in question.

Plaintiffs also assert that the contracts allow repossession, foreclosure or acceleration without notice. Plaintiffs incorrectly reach the conclusion that the contracts do not require notice by ignoring the clause "after providing Debtor with the notice and opportunity to cure required by applicable statutes or regulations" in Paragraph 11. Plaintiffs argue that the phrase "required by applicable statutes or regulations" in Paragraph 11 is similar to the phrase found objectionable by the Eleventh Circuit in *Quiller*, 727 F.2d 1067.

In *Quiller*, the contract stated that the full balance could become due and payable "without notice," and the creditor could foreclose or repossess "without notice or demand for performance or legal process," and to demand payment of the full balance upon the debtor's default or the creditor's insecurity "without notice." Although the *Quiller* contract required "any notice of right to cure" before acceleration, it also permitted repossession without notice and without any notice of right to cure. The contracts in question never state that actions may be taken without notice. Fur-

ther, they do not allow the creditor to accelerate, repossess or foreclose without notice. They require notice and opportunity to cure before the creditor may accelerate, repossess or foreclose.

■ The notice provisions in question are comparable to the notice provisions in *Moyer*, 799 F.2d at 1450, where the Eleventh Circuit found preemption even though the contract did not expressly provide for notice but only that the creditor's rights were "Subject to buyer's Right to Notice of Default and Right to Cure such default, if any." and *Atkinson*, 866 F.2d at 398, where the Eleventh Circuit held that contract language specifying that "Buyer shall be given a notice of right to cure default if required by applicable law" meets DIDMCA requirements.[7]

Plaintiffs additionally assert that they did not intend that the contracts be governed by DIDMCA. Nowhere in any of the pleadings or materials submitted to the district court is there any statement by plaintiffs that they did not intend their contracts to be governed by DIDMCA. Having failed to raise the issue before the district court, plaintiffs cannot raise the issue for the first time on appeal. *Grant*, 764 F.2d at 1409.

■ Plaintiffs assert that notices sent to Grider evidence noncompliance of the contracts with DIDMCA.[8] This is inapposite to a determination of whether the contracts reserved for the creditors, remedies on default which were not permitted by DIDMCA and 12 C.F.R. § 590.4(h). The district court held, and this court affirms, that the contracts do not reserve remedies for creditors on default not permitted by DIDMCA and 12 C.F.R. § 590.4(h).

---

**7.** Plaintiffs argue that *Moyer* is distinguishable because it specifically stated it was in compliance with federal law, and *Atkinson* is distinguishable because the Court held that the contract was intended to be governed by DIDMCA. Neither DIDMCA nor the regulations implementing it contain any provision which requires the contracts to state on their face that they are federal preemption contracts and that DIDMCA should apply. The contract in *Atkinson* contained a choice of law clause. *Atkinson*, 866 F.2d at 398. The Eleventh Circuit held there was no inconsistency in applying both DIDMCA

and Georgia law. The clause "required by applicable statutes or regulations" found in the notice provision of Paragraph 11 of the Plaintiffs' contracts refers to notices required by both DIDMCA and Arkansas law.

**8.** The notices in question were sent to Grider and were intended to remind Grider that she was behind in her payments. Further, the notice of default and right to cure required by DIDMCA was sent after the reminder notice.

■ Plaintiffs assert that the contracts' prepayment provision and disclosures fail to comply with DIDMCA and 12 C.F.R. § 590.4(d), which provides:

A debtor may prepay in full or in part the unpaid balance of the loan at any time without penalty. The right to prepay shall be disclosed in the loan contract in the type larger than that used for the body of the document.

Paragraph 9 of the Smythe and Grider contracts provides:

9. Prepayment: Debtor may prepay the unpaid balance of this contract in full at any time without penalty, at upon such payment, acceleration, refinancing or consolidation, debtor shall receive a refund credit calculated pursuant to the "actuarial method" after first deducting an acquisition charge of $50.00 in the event of prepayment. Debtor shall not be entitled to a refund which is less than $1.00.

Plaintiffs contend that because the contract affirmatively specifies the right to prepay in full, it gives the debtor an incomplete disclosure and is misleading and inaccurate. Plaintiffs conclude that the right to prepay "in full or in part" must be stated in the contract for it to qualify for preemption. 12 C.F.R. § 590.4(d) requires the right to prepay to be disclosed in the contract. It does not specify that the right to prepay in full or in part must be specified. It does state that the debtor must be able to prepay in full or in part at any time. Here, the debtor was not precluded from prepaying in part at any time. Further, there is nothing in the contract which could be construed as limiting the right to prepay in part. The contract states that the debt-

or may prepay, pursuant to 12 C.F.R. § 590.4(d), but it adds the words "in full." Paying off a loan in part without penalty is implicit from the statement it can be paid off in full without penalty. Defendants have no obligation to inform plaintiffs that they can pay off the loan in part without penalty. Defendants need only tell plaintiffs that they can prepay the loan. *Id.*

■ Plaintiffs also argue that the acquisition charge of $50 is a prepayment penalty prohibited by 12 C.F.R. § 590.4(d). Defendants characterize this charge as a handling charge for the costs associated with releasing the lien on the manufactured home securing the loan.[9] Defendants state that "handling charge" is for costs associated with releasing the lien on the manufactured home securing the loan. Thus, because of the nature of the charge, it is not a prepayment penalty. *Goldman,* 518 F.2d at 1252.

Further, the FHA regulations for manufactured home loans includes a prepayment provision, which provides:

Where the loan is prepaid in full, the lender shall rebate the full unearned interest on the loan, except that a minimum retained *handling charge* may be deducted from the rebate if permitted by state or local law. Unearned interest shall be determined in accordance with the actuarial method.

24 C.F.R. § 201.17 (emphasis added). Burris, Grider and Smythe's contracts explicitly state that no prepayment penalty will be imposed. The acquisition fee is not a prepayment penalty, but rather, a "handling charge" as contemplated by 24 C.F.R. § 201.17.[10] Each of the contracts state

---

**9.** Plaintiffs cite *Goldman v. First Federal Savings and Loan Assoc.,* 518 F.2d 1247 (7th Cir.1975). Here, the Court addressed whether the retention of thirteen days interest after payment of the note in-full should be characterized as a penalty. The Court held that "the mere fact that some cost is imposed on the borrower at the time the loan is prepaid does not warrant the conclusion that such cost is a penalty. Thus, for example, the defendant required plaintiffs to pay a fee of $25 for a release deed before cancelling the note and mortgage." The proper test "is whether there is a charge imposed at the time of prepayment that would not be imposed if the note

were paid at maturity instead of at an earlier date. Moreover, the nature of any such charge, rather than its amount, should be determinative." *Id.* at 1252. At oral argument, defendant's attorney assured the court that the $50.00 handling charge was never assessed for partial payments.

**10.** Because the Federal Home Loan Bank Board looks for guidance in the FHA regulations, H.R. Conf.Rep. No. 842, 96th Cong., 2d Sess. 79, *reprinted in* 1980 U.S.Code Cong. & Ad.News 298, 309, it is aware that lenders may deduct a han-

that a debtor may prepay the loan without penalty, and the plaintiffs would not have been penalized by prepaying the loan.

■ Plaintiffs assert that the contract provision stating that borrowers should see their contract documents for additional information regarding prepayment refunds and penalties violates DIDMCA and 12 C.F.R. § 590.4d.[11] The phrase "prepayment refunds and penalties" does not impose a penalty.

■ Plaintiffs argue that the right to prepay in contracts qualifying for preemption under DIDMCA must be disclosed "in type larger than that used in the body of the document." 12 C.F.R. § 590.4(d). The Burris contract is a VA guaranteed loan. The VA preemption statute does not require the right to prepay to be in larger type than that used for the body of the contract.

■ In any event, the purpose of 12 C.F.R. § 590.4(d) is to "call attention" to the prepayment provision. *Grant,* 764 F.2d at 1408. At the bottom of the front page of the Burris contract, there is a notice in bold face and in capital letters stating: "Under the law you have the right to pay off in advance the full amount due and obtain a substantial refund of the credit charge." The bold face type is inherently larger than the regular print used in the contract, although not significantly larger so. When the boldface in question is considered with its capital letters, the prepayment provision in question clearly calls to the attention of the debtor the right to prepay.

Plaintiffs further argue that there is another notice provision in all of the contracts which is entirely in bold face and in larger print than the prepayment notices. Even so, the disclosure need not be in the largest type used in the contract but rather must call to the attention of the debtor the right to prepay. *Id.* and 12 C.F.R. § 590.4(d).

Here, the prepayment notice provisions do call to the attention of the debtor the right to prepay.

Plaintiffs next argue that First Financial imposed late charges in amounts greater than that allowed by the contracts, thereby disqualifying the contracts from DIDMCA preemption. The contracts provide that a late charge of "$5.00 or 5% of the payment, whichever is less" will "be collected on any installment past due for a period of more than fifteen (15) days." Plaintiff Grider asserts she was assessed a late charge of $10. This is simply the charge for two accumulated late charges of five dollars, each which plaintiff Grider had not paid.

Further, paragraph 29(c)(3) of plaintiffs' Second Amended Complaint alleges that "the contracts violate provisions of DIDMCA and 12 C.F.R. § 590.4(f)." Plaintiffs concede in their brief that the provision in question complies with the Code of Federal Regulations. The notices sent to Grider are simply reminder notices and are not relevant to the issue of whether the contracts violate provisions of DIDMCA concerning late charges. In any event, First Financial did not impose late charges in amounts greater than that allowed by the contracts or DIDMCA.

## IV.

Plaintiffs contend that the district court erred in granting Defendants' motions to dismiss and motions for summary judgment. The Federal Rules of Civil Procedure require that a summary judgment "shall be rendered forthwith" when the district court is satisfied that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c).

■ Plaintiffs argue that questions of material fact exist because the contracts contained several provisions which were alleged to not comply with DIDMCA. Alle-

---

dling charge upon prepayment and, thus, chose not to prohibit such charges upon prepayment.

**11.** The language Plaintiffs refer to is found in the "federal box" containing disclosures required by the Truth in Lending Act. 15 U.S.C.A. § 1601, *et seq.* This disclosure is based on the

Credit Sale Model Form, which complies with the Truth in Lending Act. Regulation Z, 12 C.F.R. Part 226 provides that a creditor who uses the Credit Sale Form will be deemed to be in compliance with Regulation Z.

gations do not rise to an issue as to a material fact. *Id.* Additionally, plaintiff argues a fact issue is created concerning the conduct of the creditors regarding remedies and the alleged imposition of certain late charges. The district court concluded that the contracts were not violative of DIDMCA in any respect and this court affirms that holding. There is no genuine issue as to any material fact present in this case. *Id.*

■ Plaintiffs assert that the district court erred in holding that plaintiffs were not proper class representatives. The district court correctly held:

> Inasmuch as the Court has found that neither Burris, Grider nor Smythe has a cognizable individual claim for relief against either HOFCA or First Financial, none of them may serve as a class representative in a class action suit.

*See O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

For the reasons stated above, we AFFIRM.